**UNITED STATES of America**

v.

**Edward A. GARMATZ.**

**Crim. No. H–77–0379.**

United States District Court,
D. Maryland.

Dec. 5, 1977.

Frank C. Razzano, Sp. Asst. U. S. Atty., and Richard D. Shapiro, Sp. Asst. U. S. Atty., Newark, N. J., for the Government.

Arnold M. Weiner and M. Albert Figinski, Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

## MEMORANDUM AND ORDER

The defendant in this criminal case, Edward A. Garmatz, is a former United States Congressman from Maryland. He has here been charged in a one-Count indictment brought under 18 U.S.C. § 371 with conspiring with others to violate 18 U.S.C. § 201(g),[1] one of the federal statutes which prohibit public officials from accepting illegal bribes and gratuities. It is alleged that defendant Garmatz agreed with others to receive cash payments for official acts to be performed by him, namely his sponsorship, support, vote and decision on certain passenger ship legislation pending before him in his official capacity.

The defendant has timely filed various motions, including a motion to dismiss the indictment and a motion to strike surplusage from the indictment. Following the submission of extensive briefs by counsel for the parties, a hearing on these and other motions has been held in open court.[2] For the reasons set forth herein, this Court has concluded that defendant's motion to dismiss the indictment and defendant's motion to strike surplusage from the indictment should both be denied.

I

### The indictment

The one-Count indictment returned by the Grand Jury in this case is a lengthy one, describing the conspiracy in 19 separate paragraphs and further alleging that 18 separate overt acts were committed in furtherance thereof. At all times mentioned in the indictment until December 31, 1972, defendant Garmatz was a Congressman and Chairman of the Merchant Marine and Fisheries Committee of the House of Representatives.[3] During a portion of the period covered by the indictment, two shipping companies, Moore McCormack Lines, Inc. and United States Lines, Inc., owned three American flag passenger vessels, the BRASIL, the ARGENTINA and the UNITED STATES.[4] All three of these vessels had been constructed with federal subsidies under the terms of the Merchant Marine Act of 1936, which required that vessels built with such subsidies remain documented and registered under the laws of the United States. At all times mentioned in the indictment until they were sold, these three vessels had been laid up and taken out of active service because of operating losses incurred by the two companies. Accordingly, the two companies sought legislation in the Congress of the United States to authorize the sale of these three ships to foreign ownership or, alternatively, to authorize the Secretary of Commerce to purchase the UNITED STATES.

---

1. 18 U.S.C. § 201(g) provides in pertinent part as follows:

 "(g) Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him; * * * Shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. Defendant's motion for a bill of particulars was granted in part and denied in part. Defendant's motion for discovery was denied. Rulings on other motions were deferred until the pretrial conference.

3. The facts set forth herein are taken from the allegations of the indictment.

4. Moore McCormack owned the BRASIL and the ARGENTINA, and United States Lines owned the UNITED STATES.

On February 12, 1971, Moore McCormack entered into a contract to sell the BRASIL and the ARGENTINA to a Netherlands corporation for approximately $20,000,000, conditioned upon appropriate legislation being passed by Congress exempting these two vessels from the terms of the Merchant Marine Act of 1936 and permitting their sale to a foreign buyer. Although not alleged in the indictment, it is agreed that the legislation in question, introduced at various times as H.R. 10577 and H.R. 11589, was signed into law by the President as Public Law 92–296 on May 16, 1972. On August 4, 1972, title to the BRASIL was transferred to a subsidiary of the Netherlands corporation, and on August 21, 1972, title to the ARGENTINA was transferred to another subsidiary of that same corporation. On February 5, 1973, United States Lines transferred title to the UNITED STATES to the United States Government. At all times mentioned in the indictment, James R. Barker was President of Moore McCormack, Edward Heine was President and Chief Executive Officer of United States Lines and Robert McElroy was Chief Clerk of the House Merchant Marine and Fisheries Committee.

Paragraph 12 of the indictment charges that defendant Garmatz entered into an illegal conspiracy with other persons. Paragraph 12 provides as follows:

12. From at least as early as September, 1971 and continuing thereafter until April, 1973, the exact dates being to the Grand Jury unknown, in the State and District of Maryland and elsewhere, the defendant

EDWARD A. GARMATZ

together with other persons, did knowingly, wilfully and unlawfully conspire, combine, confederate and agree to commit certain offenses against the United States in violation of Title 18, United States Code, Sections 201(g), that is:

A. Directly and indirectly, to ask, demand, exact, solicit, seek, accept, receive, and agree to receive a thing of value for the use and benefit of the defendant EDWARD A. GARMATZ, being a public official of the United States, that is a member of the House of Representatives, otherwise than as provided by law for the proper discharge of his official duties, because of official acts to be performed by him, to wit: his sponsorship, support, vote, and decision on certain passenger ship legislation which might at any time be pending before him in his official capacity and in his position of trust and profit.

Paragraphs 13 through 18, inclusive, describe other acts which were allegedly a part of the conspiracy charged, as follows:

13. It was further a part of said conspiracy that in or about November, 1971, James R. Barker caused $5,000.00 in United States currency to be transported from New York, New York, to Washington, D. C., and delivered to Robert McElroy for the use and benefit of the defendant EDWARD A. GARMATZ.

14. It was further a part of said conspiracy that on or about January 20, 1972, Edward J. Heine, on behalf of United States Lines, caused at least $5,000.00 in United States currency to be transported from New York, New York, to Washington, D. C., to be paid to the defendant EDWARD A. GARMATZ.

15. It was further a part of said conspiracy that on or about January 21, 1972, Robert McElroy received $1,000.00 in United States currency from United States Lines for the use and benefit of the defendant EDWARD A. GARMATZ.

16. It was further a part of said conspiracy that on or about February, 1972, Robert McElroy received $5,000.00 in United States currency for the use and benefit of the defendant EDWARD A. GARMATZ from James R. Barker in New York, New York.

17. It was further a part of said conspiracy that on or about August 11, 1972, United States Lines paid the defendant EDWARD A. GARMATZ $4,000.00 in United States currency in Baltimore, Maryland.

18. It was further a part of said conspiracy that between September 1972 and

April 1973, the defendant EDWARD A. GARMATZ requested from Edward J. Heine, the payment by United States Lines of an additional $10,000.00 in cash or as a fictitious consulting fee.

Nineteen separate overt acts are then alleged, the first such act occurring on November 3, 1971 and the last such act occurring on April 13, 1973. These acts include meetings between Heine and defendant Garmatz, between Heine and McElroy, and one meeting at which Heine, McElroy and defendant Garmatz were all present; telephone conversations between Heine and Barker, between Heine and McElroy and between Heine and defendant Garmatz; the receipt of cash by McElroy for the use and benefit of the defendant Garmatz; and the receipt of cash by the defendant Garmatz.

Defendant's motions essentially raise two questions. Defendant first contends that in view of the narrow scope of the conspiracy alleged in the indictment, the return of this indictment on August 1, 1977 in this District violates the applicable federal statute of limitations and federal venue requirements. Closely linked to this argument is defendant's motion to strike surplusage from the indictment, which counsel for the defendant concedes has no independent significance. Accordingly, this Court will also deal with the motion to strike in considering defendant's arguments in support of his motion to dismiss because of the scope of the conspiracy alleged. Defendant's second major contention is that proof of the various allegations of the indictment would necessarily transgress the Speech or Debate Clause of the United States Constitution. Article I, Section 6 of the Constitution provides in pertinent part: "[F]or any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place." Each of these contentions will be considered separately.

## II

### The scope of the conspiracy alleged

Defendant contends that the scope of the alleged conspiracy is defined solely in Paragraph 12 of the indictment and that the language in Paragraph 12 restricts the offense charged to that of bribery in connection with official acts to be performed in the future. Defendant expressly relies on the following language of the indictment: "That defendant EDWARD A. GARMATZ *being a public official*" conspired to "ask, demand, solicit, seek, accept, receive, and agree to receive a thing of value . . . because of official acts *to be performed* by him, to wit: his sponsorship, support, vote, and decision on certain passenger ship legislation which might at any time be pending before him in his official capacity and in his position of trust and profit." (Emphasis added.) Defendant asserts that since the proposed legislation which permitted the sale or transfer of these vessels became law on May 16, 1972, he could not have solicited or received payments for future official acts to be performed after the May 16, 1972 date. It is thus defendant's contention that the conspiracy charged was complete when the bill in question became law on May 16, 1972 and that subsequent events and overt acts alleged in the indictment were not in furtherance of the conspiracy and should be stricken.

If defendant is correct as to the scope of the indictment, and if this Court were to grant defendant's motion to strike as surplusage all allegations concerning events and overt acts occurring after May 16, 1972, then the applicable five-year statute of limitations would have expired before this indictment was returned on August 1, 1977.[5] Moreover, were this Court to accept defendant's contentions, venue would not properly be laid in Maryland in this case inasmuch as the only overt acts alleged to have occurred in Maryland took place after May 16, 1972. Accordingly, if the motion to strike surplusage were to be granted, this Court would also grant defendant's motion to dismiss.

In *Grunewald v. United States,* 353 U.S. 391, at page 397, 77 S.Ct. 963, at page 970, 1 L.Ed.2d 931 (1957), the Supreme Court said the following:

5. The controlling statute of limitations is 18 U.S.C. § 3282.

* * *, the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy * * *

Defendant reads the indictment in this case much too narrowly. To understand the scope of the crime charged in a particular indictment, it is necessary that the indictment be read in its entirety. *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970); 8 Moore's *Federal Practice,* ¶ 7.04. Defendant places heavy reliance on certain language in Paragraph 12 of the indictment, ignoring not only other allegations in Paragraph 12 but also the allegations of Paragraphs 13 through 18 and of Overt Acts Nos. 1 through 19.

At the very outset of Paragraph 12, it is alleged that the conspiracy lasted from September 1971 until April 1973. There was a meeting in November of 1971 and the delivery of cash in that month. Between September 1972 and April 1973, the defendant requested an additional payment of cash. Meetings were held in January, February and April 1973.

 Were a public official to enter into a conspiratorial agreement with others whereby certain payments would be made to him before he performed certain acts and other payments would be made to him after he performed these acts, it could hardly be doubted that the conspiracy would not be at an end until after the final payments had been made or until after the official solicited final payments which were due him or believed to be due him under the illegal agreement. In such a conspiracy case, the conspiracy would not have been ended by performance of the acts but only by the subsequent payments or solicitations for subsequent payments believed to be due.

 A reading of the indictment here in its entirety indicates that this illegal conspiracy involved solicitation and receipt of money by the defendant in return for a promise to perform official acts. The conspiracy thus terminated not when the passenger ship legislation became law on May 16, 1972, but only after all money had been solicited or received by the defendant pursuant to the alleged illicit agreement. Inasmuch as the indictment alleges in Paragraphs 17 and 18 that as a part of the conspiracy defendant received $4,000 in Baltimore, Maryland from United States Lines on August 11, 1972 and solicited an additional payment of $10,000 between September 1972 and April 1973, this prosecution would not be barred by limitations or because of lack of venue.

Moreover, this Court is satisfied that the scope of the conspiracy alleged here encompasses all of the overt acts charged. Essentially, the objective of the conspiracy here was the exchange of money for an agreement or promise to perform official acts. The government charges that pursuant to the illegal agreement, defendant solicited and received gratuities both before and after the bill became law. Thus, the objective of the conspiracy was not attained until the solicitation and exchange of all money, both before and after the legislation in question became law.

In the arguments he has presented to the Court, the defendant has confused the limitations period applicable to a substantive offense charged under 18 U.S.C. § 201(g) with the limitations period applicable to a conspiracy offense charged under 18 U.S.C. § 371. Under § 201(g), it is a violation of the law for a public official to solicit, accept, receive or agree to receive anything of value for himself for or because of any official act performed or to be performed by him. Under § 371, a public official who conspires with another to do any of these acts likewise violates the law. In this particular case, a conspiracy to violate § 201(g) has been charged, not the substantive offense itself. The indictment alleges that the conspiracy still existed within the five years prior to the indictment of August 1, 1977 and that at least one overt act in furtherance of the conspiratorial agreement was committed in Maryland within that period. These allegations are clearly suffi-

cient. *Grunewald v. United States, supra,* 353 U.S. at 397, 77 S.Ct. 963.

■ Defendant argues that the words in Paragraph 12 "because of official acts to be performed by him" limit the duration of the conspiracy to a period ending on May 16, 1972, when the legislation in question was signed into law by the President. Noting that he was no longer a public official after December 31, 1972, defendant further contends that the words "being a public official" in Paragraph 12 mean that the conspiracy must in any event have ended before 1973. But the language relied upon quite obviously refers to the period in 1971 when the illegal agreement was first formulated. At that time, defendant was indeed a public official of the United States and the promised acts were indeed to be performed in the future. Other allegations of the indictment make it clear that the conspiracy allegedly commenced while defendant was a member of the House of Representatives but did not terminate until at least four months after he had left public office. § 201(g) by its express terms applies to both public officials and to former public officials.

Defendant's reliance on *United States v. Davis,* 533 F.2d 921 (5th Cir. 1976) is misplaced. That case involved a conspiracy to violate 18 U.S.C. § 1001. The Fifth Circuit held that the sole object of the conspiracy charged was the submission of false statements to the Department of Labor, that the conspiracy ended with such submission and that subsequent issuance of a contract by the Department of Labor in reliance on the false statements was not an overt act within the scope of that conspiracy. Here, the conspiracy which has been alleged contemplated payments both before and after any official acts performed by the defendant and both during and after the time that he was a public official.

## III

### The Speech or Debate Clause

As his second major argument in support of his motion to dismiss the indictment, defendant contends that prosecution of this case would contravene the Speech or Debate Clause of the Constitution, as interpreted by recent decisions of the Supreme Court and of the Fourth Circuit.

In *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), a former Congressman from Maryland had been charged in a multi-Count indictment with violating the federal conflict of interest statute and with conspiracy to defraud the United States. The Fourth Circuit set aside Johnson's convictions on all Counts, concluding that the Speech or Debate Clause had been violated. *United States v. Johnson,* 337 F.2d 180 (4th Cir. 1964). While the indictment had focused on improper interference with the Department of Justice, one overt act in the conspiracy Count had alleged that Johnson had accepted money to deliver a speech on the floor of the House of Representatives. In affirming, the Supreme Court held that inquiry into a Congressman's legislative acts such as a speech on the House floor, or inquiry into his motives for making such a speech, violated the Speech or Debate Clause. The case was remanded for a new trial, the Court noting that, with regard to the Counts charging that Johnson improperly interceded with the executive branch, it could not be successfully contended that the Clause reached conduct "that is in no wise related to the due functioning of the legislative process." *Id.* 383 U.S. at 172, 86 S.Ct. at 751. Following remand, the District Court, with the consent of the government, dismissed the conspiracy Count, and Johnson was subsequently convicted on the improper influence Counts. The Fourth Circuit affirmed those convictions, and the Supreme Court denied certiorari. *United States v. Johnson,* 419 F.2d 56 (4th Cir. 1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1235, 25 L.Ed.2d 423 (1970).

More recently, in *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), a former United States Senator from Maryland had been charged with various offenses in an indictment which included four Counts of soliciting and receiving

bribes to perform legislative acts in the future in violation of 18 U.S.C. § 201(c)(1) and one Count of having solicited and received a gratuity in return for the performance of past legislative acts in violation of 18 U.S.C. § 201(g). In an Opinion by Chief Justice Burger, the Supreme Court held that the Speech or Debate Clause did not compel dismissal of an indictment for bribery, even where the *quid pro quo* for the bribe was a patently legislative act.[6] The Chief Justice explained the interaction of the bribery statute and the Speech or Debate Clause in the following language, at pages 526–527, 92 S.Ct. at page 2544:

> The question is whether it is necessary to inquire into how appellee spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute. The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.

> Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. It is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator. It is not an "act resulting from the nature, and in the execution, of the office." Nor is it a "thing said or done by him, as a representative, in the exercise of the functions of that office," [*Coffin v. Coffin* ] 4 Mass. [1], at 27. Nor is inquiry into a legislative act or the motivation for a legislative act necessary to a prosecution under this statute or this indictment. When a bribe is taken, it does not matter whether the promise for which the bribe was given was for the performance of a legislative act as here or, as in *Johnson*, for use of a Congressman's influence with the Executive Branch. And an inquiry into the purpose of a bribe "does not draw in

question the legislative acts of the defendant member of Congress or his motives for performing them." 383 U.S., at 185, 86 S.Ct. 749.

Nor does it matter if the Member defaults on his illegal bargain. To make a prima facie case under this indictment, the Government need not show any act of appellee subsequent to the corrupt promise for payment, for it is *taking* the bribe, not performance of the illicit compact, that is a criminal act. If, for example, there were undisputed evidence that a Member took a bribe in exchange for an agreement to vote for a given bill and if there were also undisputed evidence that he, in fact, voted against the bill, can it be thought that this alters the nature of the bribery or removes it from the area of wrongdoing the Congress sought to make a crime?

In discussing the Count which charged the giving of a gratuity for an act already performed, the Chief Justice said the following, at pages 527–528, 92 S.Ct. at 2545:

> Another count of the indictment against appellee alleges that he "asked, demanded, exacted, solicited, sought, accepted, received and agreed to receive" money "for and because of official acts performed by him in respect to his action, vote and decision on postage rate legislation which had been pending before him in his official capacity . . . ." This count is founded on 18 U.S.C. § 201(g), which provides that a Member of Congress who "asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him" is guilty of an offense. Although the indictment alleges that the bribe was given for an act that was actually performed, it is, once again, unnecessary to inquire into the act or its motivation. To sustain a conviction it is necessary to show that appellee solicited, received, or agreed to receive, money with knowledge that the donor was paying him compensation for an official act.

---

**6.** This was a 6–3 decision, with Justices Brennan, White and Douglas dissenting.

Inquiry into the legislative performance itself is not necessary; evidence of the Member's knowledge of the alleged briber's illicit reasons for paying the money is sufficient to carry the case to the jury.

MR. JUSTICE WHITE rests heavily on the fact that the indictment charges the offense as being in part linked to Brewster's "action, vote and decision on postage rate legislation." This is true, of course, but our holding in *Johnson* precludes any showing of how he acted, voted, or decided. The dissenting position stands on the fragile proposition that it "would take the Government at its word" with respect to wanting to prove what we all agree are protected acts that cannot be shown in evidence. Perhaps the Government would make a more appealing case if it could do so, but here, as in that case, evidence of acts protected by the Clause is inadmissible. The Government, as we have noted, need not prove any specific act, speech, debate, or decision to establish a violation of the statute under which appellee was indicted. To accept the arguments of the dissent would be to retreat from the Court's position in *Johnson* that a Member may be convicted if no showing of legislative act is required.

MR. JUSTICE BRENNAN suggests that inquiry into the alleged bribe is inquiry into the motivation for a legislative act, and it is urged that this very inquiry was condemned as impermissible in *Johnson*. That argument misconstrues the concept of motivation for legislative acts. The Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions. In *Johnson*, the Court held that, on remand, Johnson could be retried on the conspiracy-to-defraud count, so long as evidence concerning his speech on the House floor was not admitted. The Court's opinion plainly implies that had the Government chosen to retry Johnson on that count, he could not have obtained immunity from prosecution by asserting that the matter being inquired into was related to the motivation for his House speech. See n. 7, *supra*.

The only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself. Under this indictment and these statutes no such proof is needed.

Accordingly, the judgment of the District Court dismissing the indictment was reversed and the case was remanded for further proceedings. Following remand, the District Judge dismissed that Count of the original indictment which charged the receipt of a gratuity for past acts on the ground that since it related explicitly to payment for acts already performed, the government could not prove its case without proving the performance of legislative acts. *See United States v. Brewster*, 165 U.S.App.D.C. 1, at 4, n.4, 506 F.2d 62, at 65, n.4 (1974). Following conviction of defendant Brewster on three of the Counts, the convictions were vacated on appeal and the case was again remanded for a new trial because of erroneous instructions to the jury. *United States v. Brewster, supra* at 83.[7]

*United States v. Dowdy*, 479 F.2d 213 (4th Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973), involved the conviction in this Court of former Congressman Dowdy of Texas of each of the charges contained in an eight-Count indictment. On appeal, the Fourth Circuit held that while the wording of the two conspiracy Counts was generally proper under the Speech or Debate Clause as interpreted by *Brewster*, Dowdy's conviction on two Counts of conspiracy, one Count of interstate travel to facilitate bribery, and two of the five Counts of perjury had been obtained by the use of evidence which infringed the Clause. However, in his Opinion, Judge

---

7. On June 25, 1975, defendant Brewster entered a plea of *nolo contendere* to one Count charging the acceptance of an illegal gratuity in violation of 18 U.S.C. § 201(g). *See Attorney Grievance Commission v. Brewster*, 280 Md. 473, 374 A.2d 602 (1977).

Winter expressly noted that convictions under these five Counts might well have been obtained without improper inquiry into the Congressman's legislative acts, and the government was accordingly permitted to retry Dowdy on these Counts, if it wished.[8] Judge Winter said the following, at page 227:

> * * *, since the essence of the offenses charged was an illegal *agreement* to accomplish illegal objectives, guilt could be established by proof of the agreement, accompanied by proof of one or more non-legislative overt acts to carry it out, without proof of legislative acts immunized from inquiry by the speech or debate clause. (Emphasis in original)

■ From an analysis of these cases, this Court concludes that the indictment here does not contravene the Speech or Debate Clause. Under the *Johnson* and *Brewster* decisions of the Supreme Court, this Clause does not bar an indictment under a general statute where the government can make a prima facie case without inquiring into legislative acts. *United States v. Dowdy, supra* at 224. Just such an indictment is before the Court in this case. Under the one conspiracy Count contained in this indictment, the essence of the offense charged is an illegal agreement to accomplish an illegal objective and guilt can be established "by proof of the agreement, accompanied by proof of one or more nonlegislative acts to carry it out, without proof of legislative acts immunized from inquiry by the speech or debate clause." *Dowdy, supra* at 227.

Defendant here relies on language in the Supreme Court's *Johnson* Opinion indicating that the Clause should be construed broadly to effectuate its purposes. *See* 383

U.S. at 180, 86 S.Ct. 749. However, the *Brewster* decision, handed down six years after *Johnson,* would appear to have contracted the broader interpretation of the term "legislative act" suggested in the earlier Opinion. *Dowdy, supra* at 222; Comment, *Brewster, Gravel* and Legislative Immunity, 73 Col.L.Rev. 125, 146 (1973).

■ Pointing out that some of the allegations of this indictment refer to payments or solicitations occurring after the legislation in question was enacted, defendant in particular argues that the Speech or Debate Clause prohibits a prosecution for illegal solicitations pertaining to past legislative acts. In support of this argument, defendant relies on Judge Hart's dismissal of a similar Count following remand of the *Brewster* case. *See* 506 F.2d at 65, n.4. But the indictment in *Brewster* charged a violation of the substantive offense. Here, a conspiracy has been charged involving some acts occurring before the legislation was enacted and others occurring afterwards. Even if this indictment did charge the substantive offense of a solicitation or receipt of money for acts already performed, this Court concludes that the case could still go forward, provided that the prosecution did not offer evidence of the performance by the defendant of legislative acts.[9] As Chief Justice Burger observed in *Brewster,* even if an indictment alleges that the bribe was given for an act that was actually performed, a conviction may be sustained if it is shown that the public official solicited or received money with knowledge that the donor was paying him compensation for an official act. 408 U.S. at 527, 92 S.Ct. 2531.

---

**8.** Inasmuch as Dowdy's conviction on three of the perjury Counts had been affirmed and concurrent sentences had been imposed, the government, following remand, chose not to retry the Congressman on any of these other five Counts. *See United States v. Dowdy,* Criminal No. 70–0123–T (D.Md. Order of Dismissal dated April 23, 1975).

**9.** This Court does not agree, as defendant contends, that the District of Columbia Circuit

Court approved the District Court's dismissal of Count 9 of the *Brewster* indictment. *See United States v. Brewster,* 165 U.S.App.D.C. 1, 4, n.4, 506 F.2d 62, 65, n.4 (1974). The Circuit Court expressed no opinion concerning the action taken by the trial judge. Moreover, the jury instructions discussed by the Circuit Court had been given by the same trial judge who had dismissed Count 9 and pertained to future not past legislative acts.

■ In any event, the essence of the offense charged in this case is the illegal agreement. To prove the essential elements of this indictment, there is no need for the government to inquire into how defendant Garmatz spoke, debated or voted or into anything he did in the Chamber or in committee. This indictment does not allege the performance by the defendant of any legislative acts, either as a part of the conspiracy or as overt acts committed in furtherance thereof. Furthermore, there is no need here for the government to show that defendant fulfilled the bargain, either in proving the conspiracy itself or any of the overt acts.

■ Relying on *United States v. Dowdy, supra*, defendant contends that the validity of this indictment can be determined only if this Court examines in advance the actual evidence to be offered by the government at the trial. Only then, argues defendant, can this Court ascertain whether evidence of legislative acts will be presented by the government in support of the allegations of the indictment.

This Court is satisfied that no such cumbersome procedure is necessary in order to afford an indicted Congressman the protections guaranteed by the Speech or Debate Clause. The allegations of this indictment have been carefully scrutinized by the Court, and they satisfy the *Brewster* requirement that legislative acts performed by a Congressman cannot be alleged or proved in a case of this sort. Moreover, counsel for the government has agreed to make proffers of the prosecution's proof prior to the trial. At that time, this Court will determine whether any of the proof to be presented at the trial includes evidence of the performance by the defendant of legislative acts.

■ This Court cannot agree with the all-encompassing definition which defendant gives to the term "legislative act." Defendant relies on *McSurely v. McClellan*, 553 F.2d 1277 (D.C.Cir. 1976), *cert. granted*,

—— U.S. ——, 98 S.Ct. 260, 54 L.Ed.2d 173 (1977) in asserting that he is entitled to the protections of the Clause with respect to any discussion with any interested party which might be construed as a part of the information gathering process of a Congressman or of a Congressional committee. Pertinent decisions of the Supreme Court do not support such a proposition. The Speech or Debate Clause has "finite limits", *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). Legislative acts "are not all-encompassing", and matters other than actual speech or debate in either House must be "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings," before they receive the protections of the Clause. *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972); *United States v. Dowdy, supra* at 222. The Clause does not prohibit inquiry into illegal conduct "simply because it has some nexus to legislative functions," and the government is therefore not barred from presenting proof of "activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster, supra*, 408 U.S. at 528, 92 S.Ct. at 2545.

■ Furthermore, the Speech or Debate Clause "does not extend beyond what is necessary to preserve the integrity of the legislative process." *United States v. Brewster, supra* at 517, 92 S.Ct. at 2540. "Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act." *United States v. Brewster, supra* at 526, 92 S.Ct. at 2544. Thus, discussions relating to the giving or receiving of a bribe would not be barred at the trial, nor conversations of co-conspirators which might be casually or incidentally related to legislative affairs.

Nor does *United States v. Helstoski* (D.N.J. February 22, 1977) [10] support the position taken by the defendant here. In

---

**10.** The government has appealed from certain rulings made by the District Judge in *Helstoski*. That appeal is presently pending before the Third Circuit and has been docketed as No. 77–1423.

that case, the District Judge denied a motion filed by New Jersey Congressman Helstoski to dismiss four Counts of an indictment charging him with conspiracy and substantive violations of 18 U.S.C. § 201(c). Relying on *Brewster*, the Court there held that the indictment Counts in question did not violate the Speech or Debate Clause even though they made specific reference to legislative acts of defendant Helstoski.

The defendant here relies in particular on further rulings made by the District Judge in *Helstoski* prohibiting the introduction by the government at the trial of evidence of the Congressman's past performance of a legislative act. Twenty-three offers of proof had been submitted to the Judge *in camera*, and after considering these proffers, he made the rulings which are now being challenged by the government on appeal.[11] But those rulings were made as to evidence to be offered in support of an indictment quite different from the one involved in this case. Unlike the indictment filed in this Court which charges only a conspiracy to violate § 201(g), the *Helstoski* indictment involved substantive offenses charging violations of § 201(c). Moreover, the proof itself was not discussed by the District Judge in his Opinion and has not been made available to this Court because it is under seal. Some of the proof apparently included direct evidence of the actual introduction by the Congressman of bills in the House of Representatives, proof which on its face would appear to involve the performance of a legislative act. If any proffer made in this case indicates that the government seeks to introduce direct evidence of the performance by defendant Garmatz of a legislative act, such evidence will be excluded. The question before this Court when the proffers are made will be whether the government is seeking to introduce direct evidence of the performance of a legislative act as that term was defined in *Brewster* and *Gravel*, not whether the legislative act in question was performed in the past or in the future.

11. One of the substantial issues on appeal is whether Congressman Helstoski waived his privilege under the Speech or Debate Clause by

For the reasons stated, it is this 5th day of December, 1977, by the United States District Court for the District of Maryland,

ORDERED:

1. That the defendant's motion to dismiss the indictment be and the same is hereby denied; and

2. That the defendant's motion to strike surplusage from the indictment be and the same is hereby denied.

voluntarily testifying and producing documents before the Grand Jury.