**GOVERNMENT OF the VIRGIN ISLANDS, Appellant,**

v.

**LEE, Sidney, Appellee.**

**No. 84–3203.**

United States Court of Appeals, Third Circuit.

Argued April 22, 1985.

Decided Oct. 18, 1985.

---

James W. Diehm, U.S. Atty., Hugh P. Mabe, III, Asst. U.S. Atty. Dist. of Virgin Islands, U.S. Dept. of Justice, Charlotte Amalie, St. Thomas, V.I., Robert J. Erickson (argued), Dept. of Justice, Washington, D.C., for appellant.

John E. Stout, Grunert, Stout & Smock, Charlotte Amalie, St. Thomas, V.I., Nathan Lewin (argued), Seth P. Waxman, Miller, Cassidy, Larroca & Lewin, Washington, D.C., Alexander A. Farrelly, Birch, de Jongh & Farrelly, Charlotte Amalie, St. Thomas, V.I., for appellee.

Before ADAMS, GARTH and BECKER, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

In this appeal we are asked to decide whether the district court erred in dismissing, prior to trial, a four count information against appellee Sidney Lee. The four count information was filed as a result of a trip that Lee had taken to New York and Washington, D.C. and for which he sought partial expense reimbursement from the Virgin Islands government. Lee, who at the time of the trip was a Virgin Islands legislator, claimed that the purpose of his trip was for legislative fact-finding. The government, on the other hand, maintained that the primary purpose of Lee's trip was personal and political, rather than legislative.

Count I of the information charged that Lee knowingly falsified or concealed the personal nature of his trip in connection with his claim to the Virgin Islands legislature for travel expenses in violation of 14 V.I.C. § 843(2). Counts II and III of the information charged Lee with having violated 14 V.I.C. § 791(2) by attempting to pass two falsified restaurant stubs as genuine receipts, and Count IV charged Lee with making false statements under oath with regard to the two restaurant stubs, in violation of 14 V.I.C. § 1541.

On Lee's motion, the district court dismissed Count I of the information on the ground that Lee's legislative Speech or Debate privilege precluded any inquiry into the purpose or motivation of Lee's *purportedly* legislative trip. That same day, the district court also dismissed Counts II, III, and IV because the government, having expressed to the court its intention to appeal the district court's dismissal of the related Count I, was not prepared to proceed to trial on the other counts.

After a careful review of the record and examination of the relevant case law, we conclude that, as a general matter, legislative fact-finding is entitled to the protection of legislative immunity, but that this immunity does not bar an inquiry into whether a legislator's activities and conversations were, in fact, legislative in nature. We therefore reverse the district court's dismissal of Count I. Since the district court may not have dismissed Counts II, III and IV had it not earlier dismissed Count I, we also reinstate the last three counts.

## I.

In February 1982, Sidney Lee, at the time a Virgin Islands legislator, sought and received approval from the President of the Virgin Islands legislature for a legislative fact-finding trip to New York and Washington, D.C. for the four day period of March 30, 1982 to April 2, 1982. Lee represented to the President that, during this trip, he would discuss such official legislative business as consumer affairs, interior matters and issues involving transportation. App. at 60.

Lee left for New York and Washington on April 8, 1982, not March 30th,[1] and returned from his trip thirteen days later on April 20, 1982. On April 28, 1982, Lee submitted a breakdown of his out-of-pocket expenses to the Virgin Islands legislature's business office for reimbursement. In his request for reimbursement, Lee stated:

> Met with officials of "Area Transportation and Consumer Affairs" in New York. Attended hearings of "UMTA", also visited the Department of Transportation in Washington. The "White House" in reference to Consumer Affairs

and Rick Neal at the "White House" in reference to Airport Transportation and Boat between Islands. Senator Lee stayed over at the suggestion of Mr. Neal and discussed Virgin Islands matters at the U.S. Department of Interior with Assistant Secretary Pedro San Juan and Messers Miller, Down and Ms Neville Morales. Went to Interior Hearing on Environment and hearings on UMTA. App. at 61.

A subsequent investigation[2] into Lee's trip by law enforcement officers, however, revealed that Lee may not have met with some of the people with whom he claimed, in his reimbursement request, to have met. For example, although Lee stated that he met with officials of the "Area Transportation and Consumer Affairs in New York," Lee later indicated in his deposition that he did not meet with those officials since they were not available due to the Easter Holiday Weekend and the holiday of Passover. Similarly, Lee claimed that he "attended hearings of [the] UMTA," but the official calendar for the Senate Banking Committee reveals that there were no Urban Mass Transit Act hearings during the time of Lee's trip to Washington. App. at 63.

In addition, the investigation indicated that Lee may have failed to report the personal nature of much of his trip.[3] The government contends that Lee's meetings with Rick Neal at the White House and with Messrs. Miller and Down, and Ms. Morales, did not involve legislative fact-finding, but rather centered around environmental problems that Lee was experiencing in his personal efforts to develop a 230-acre parcel of land in St. Croix known as Sandy Point.

---

1. In his reimbursement request, Lee explained that his trip was postponed "due to airport [sic] closing and change [sic] in appointments as a result of very bad weather." App. at 61.

2. The investigation included the voluntary deposition of Lee on September 1, 1982, at the offices of the United States Attorney. At this deposition, Lee was under oath and was informed by the Assistant United States Attorney that he was subject to the penalties of perjury if he lied.

3. Lee represented in the cost breakdown for his trip that he spent 25% of his time on personal matters. Accordingly, Lee only sought reimbursement for 75% of his out-of-pocket expenses. Lee's expenses, which totaled $1,751.53, were comprised of airfare, airport transfers, five days' lodging, and seven meals. *See* Appendix II of Appellee's Brief.

Lee's personal business difficulties were also allegedly discussed at great length at Lee's meetings with the Department of Interior's Office of Territorial and International Affairs. Finally, Lee's claim for reimbursement did not mention the fact that he attended a three day meeting of the "Presidential Eagles", a group of major contributors to the Republican National Committee. The government maintains that Lee's attendance at the "Presidential Eagles" meeting was not a legislative activity, but was of a purely political nature.

On March 31, 1983, the United States Attorney for the Virgin Islands filed a four count criminal information against Lee. The First Count charged that Lee had knowingly falsified or concealed "the personal political and the personal business nature" of what had been "claimed [as an] official business trip," in violation of 14 V.I.C. § 843(2).[4] App. at 3. In essence, the First Count alleged that the purpose of Lee's trip was largely personal in nature, and that Lee had concealed this material fact when he submitted his claim for reimbursement. The three remaining counts did not relate to the purpose of the trip, but to Lee's specific requests for reimbursement. Counts II and III charged Lee with submitting two falsified receipts for reimbursement (stubs from two restaurant checks) in connection with his trip in violation of 14 V.I.C. § 791(2)[5]. Count IV alleged that Lee perjured himself, in violation of 14 V.I.C. § 1541[6], when he testified

at deposition about the two restaurant stubs.

Lee moved to dismiss Count I "on the grounds that the proof required to substantiate the charge, and to defend against it, contravene[d] [his] legislative privilege under 48 U.S.C. § 1572(d)." App. at 18. Lee also moved to dismiss Counts II and III because the falsified documents were not "receipts" within the meaning of 14 V.I.C. § 791(2) and to dismiss Count IV because his testimony was not "given on an occasion when an oath may be lawfully administered." App. at 22. Finally, Lee argued that all the counts should be dismissed for failure to proceed by grand jury indictment.

On May 31, 1983, after a pre-trial hearing, the district court granted Lee's motion to dismiss Count I based on Lee's legislative privilege. The district court held that where a legislator's actions *"appear"* to be official in nature, legislative immunity prohibits further inquiry into whether those actions were, in fact, official in nature. App. at 47. The district court rejected Lee's alternate arguments and denied Lee's motion to dismiss Counts II, III, and IV. These counts were severed from Count I.

The government, arguing that the district court's ruling on Count I had a "significant negative impact" on the remaining counts, moved immediately for a continuance or a dismissal without prejudice with regard to Counts II, III and IV, pending

---

**4.** 14 V.I.C. § 843(2) provides that whoever "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact: in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the government of the Virgin Islands, shall be fined not more than $500 or imprisoned not more than two years, or both."

**5.** 14 V.I.C. § 791(2) provides that whoever, "with intent to defraud another, utters, publishes, passes, or attempts to pass, as true and genuine, any of the false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged or counterfeited; shall be fined not more than $2,000 or imprisoned not more than 10 years, or both."

**6.** 14 V.I.C. § 1541 provides that:

Whoever, in or in connection with, any action, proceeding, hearing or inquiry or on any occasion when an oath may be lawfully administered—

(1) swears or affirms—

(A) that he will truly testify, declare, depose or certify: or

(B) that any testimony, declaration, deposition, certificate, affidavit or other writing subscribed by him is true: and

(2) willfully and knowingly testifies, declares, deposes or certifies falsely or states in his testimony, deposition, affidavit or certificate any matter to be true which he knows to be false—shall be imprisoned not more than 10 years.

the resolution of the government's appeal on Count I. App. at 50–51. The district court denied the government's motion. When the government refused to proceed to trial with respect to the remaining counts, the district court then dismissed Counts II, III and IV because of the government's perceived unnecessary delay in bringing those charges to trial. *See* Fed.R.Crim.P. 48(b).

On June 17, 1983, the government moved for reconsideration of the district court's May 31, 1983, dismissal. On February 28, 1984, the district court denied the government's motion for reconsideration, and on March 28, 1984, the government appealed pursuant to 18 U.S.C. § 3731 from the district court's May 31, 1983 order dismissing the four count information.

## II.

As a preliminary matter, we must determine whether this Court has jurisdiction to consider the government's appeal. Under 18 U.S.C. § 3731, the government has thirty days in which to appeal from a district court's dismissal of an information. In the present case, the government filed an appeal on March 28, 1984, well over thirty days from the district court's May 31, 1983, order. However, on June 17, 1983, seventeen days after the district court's dismissal of the information, the government moved for reconsideration. The question, therefore, is what effect the government's motion for reconsideration had on the timeliness of its subsequent appeal.

While there exists no rule of criminal procedure expressly authorizing a district court in a criminal case to entertain a motion for reconsideration, the Supreme Court has held that such a right exists based on "traditional and virtually unquestioned practice." *United States v. Dieter*, 429 U.S. 6, 8 n. 3, 97 S.Ct. 19, 19 n. 3, 50 L.Ed.2d 8 (1976). In addition to sanctioning the use of motions for reconsideration in criminal cases, the Court in *Dieter* held that a timely motion for reconsideration in a criminal case tolls the period in which to take an appeal. The *Dieter* Court also

implied that the government had thirty days from the date of the district court's final order in which to file a timely motion for reconsideration. *Accord United States v. Rothseiden*, 680 F.2d 96 (11th Cir.1982); *United States v. Leonard*, 639 F.2d 101 (2nd Cir.1981); *United States v. Bulgier*, 618 F.2d 472 (7th Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 51 (1980). The Court went on to hold that after the district court either grants or denies a timely motion for reconsideration, the government has another 30 days in which to file an appeal.

■ In the instant case, the government moved for reconsideration within thirty days of the district court's dismissal, and filed an appeal within thirty days of the district court's denial of its motion for reconsideration. Accordingly, under *Dieter*, we have jurisdiction.

## III.

The merits of the instant appeal present us with two distinct, but related, issues. The first is whether legislative fact-finding is a protected legislative act entitled to immunity. The second is whether such immunity bars inquiry into activities which are *purportedly* legislative in character.

Legislators in the Virgin Islands, like their counterparts in the national and many state legislatures, enjoy immunity for actions taken in the regular course of the legislative process. The Revised Organic Act of the Virgin Islands provides, in relevant part, that "No member of the [Virgin Islands] legislature shall be held to answer before any tribunal other than the legislature for any speech or debate in the legislature...." 48 U.S.C. § 1572(d).

■ Although this Court has not, as yet, precisely outlined the parameters of protection afforded by the Virgin Islands' legislative immunity provision, we recognize that the above quoted provision is worded similarly to the Speech or Debate Clause of the United States Constitution, which is the legislative immunity provision for our national representatives. *See* U.S. Const. art.

1, § 6.[7]  Indeed, the policies underlying the Speech or Debate Clause and the Virgin Islands' legislative immunity provisions are the same.  Both were designed to protect the integrity of the legislative process by insuring the independence of individual legislators.  As the Supreme Court stated in *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), the central role of such immunity is "to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary...."  *Id.* at 617, 92 S.Ct. 2623.  Since the purposes of the two immunity provisions are so closely parallel, we find that the interpretation given to the Speech or Debate Clause of the Federal Constitution, while not dispositive as to the meaning of the legislative immunity provision for the Virgin Islands, is, nevertheless, highly instructive.[8]

### A.

The first question to be addressed is whether legislative fact-finding—the activity in which Lee maintains he engaged during his trip to New York and Washington—is the type of activity that is protected by legislative immunity.  In *United States v. Brewster*, 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972), the Supreme Court held that the Speech or Debate Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts."  The immunity, however, does not prohibit inquiry into a legislature's activities simply because the activities have "some nexus to the legislative functions", or "casually or incidentally relate[ ] to legislative affairs".  *Id.* at 528, 92 S.Ct. at 2545.  As the Court in *Brewster* recognized:

> Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause.  These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called "news letters" to constituents, news releases, and speeches delivered outside the Congress.

*Id.* at 512, 92 S.Ct. at 2537.

■ Rather, legislative immunity protects "only acts generally done in the course of the process of *enacting legislation....*"  *Id.* at 514, 92 S.Ct. at 2538 (emphasis added): *Hutchinson v. Proxmire*, 443 U.S. 111, 113, 99 S.Ct. 2675, 2677, 61 L.Ed.2d 411 (1979).  Shielded activities must play "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House".  *Gravel v. United States, supra,* 408 U.S. at 625, 92 S.Ct. at 2627.

With respect to whether legislative fact-finding is entitled to such protected status,

---

7. The speech or Debate Clause of the Constitution of the United States provides that "for any Speech or Debate in either House, they [Members of Congress] shall not be questioned in any other place."  U.S. Const. art. 1, § 6.

Of course, there are noteworthy contrasts in the wording of the Speech or Debate Clause and its Virgin Islands counterpart.  Our constitutional provision states that Members of Congress shall not be "questioned", while the Virgin Islands statute states that legislators shall not be "held to answer".  We do not decide to what extent this difference in language renders the Virgin Islands privilege solely one of nonevidentiary use, rather than a privilege that is also testimonial in nature.  *See, e.g., United States v. Helstoski,* 635 F.2d 200, 203 (3d Cir.1980).

In this regard, we note that Lee's claim that he was impermissibly deposed by the Assistant United States Attorney is unpersuasive in light of the fact that Lee's testimony was completely voluntary.  Thus, with respect to his deposition, it appears that Lee waived any testimonial privilege he might have had under the immunity provision.

8. Neither Lee nor the government sought to distinguish, either by its terms or purposes, the Organic Act's immunity provision from the immunity provision of the United States Constitution.  Moreover, both have relied on authorities interpreting the Speech or Debate Clause of the United States Constitution.

the Supreme Court's opinion in *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) is informative. In *Eastland,* the Court held that members of Congress were shielded by legislative immunity in issuing a subpoena pursuant to an authorized Congressional investigation. In reaching its conclusion, the Court discussed the importance of investigations to the legislative process. It stated:

> The power to investigate and to do so through compulsory process plainly falls within [the sphere of legitimate legislative activity]. This Court has often noted that the power to investigate is inherent in the power to make laws because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." ... To conclude that the power of inquiry is other than an integral part of the legislative process would be a miserly reading of the Speech or Debate Clause in derogation of the "integrity of the legislative process."

*Id.* at 504–05, 95 S.Ct. at 1821–22.[9]

Appellate courts which have addressed this issue have held that investigative activities by lawmakers are protected by legislative immunity. In *McSurely v. McClellan,* 553 F.2d 1277 (D.C.Cir.1976), the District of Columbia Circuit stated:

> We have no doubt that information gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation. The [Supreme Court's] recent decision [in *Eastland*]

holds that "the power to investigate and to do so through compulsory process plainly falls within" the test for legislative activity announced in *Gravel.* We think this principle must also extend to field investigations by a Senator or his staff. "A Congressman cannot subpoena material unless he has enough threshold information to know where, to whom, or for what documents he should direct a subpoena. The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly."

*Id.* at 1286–87 (citations omitted). Similarly, in *Miller v. Transamerican Press, Inc.,* 709 F.2d 524 (9th Cir.1983), the Ninth Circuit held that "[o]btaining information pertinent to potential legislation is one of the 'things generally done in a session of the House' ... concerning matters within the 'legitimate legislative sphere.' " *Id.* at 530 (citations omitted).[10]

■ We agree that fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity. Legislators must feel uninhibited in their pursuit of information, for "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change...." *McGrain*

---

**9.** Despite the court's language in *Eastland* emphasizing the importance of fact-finding to the legislative process, in *Hutchinson v. Proxmire,* 443 U.S. 111, 121 n. 10, 99 S.Ct. 2675, 2681 n. 10, 61 L.Ed.2d 411 n. 10 (1979), the Supreme Court left undecided the question of "whether and to what extent the Speech or Debate Clause may protect calls to federal agencies seeking information...."

**10.** The government cites only *United States v. Garmatz,* 445 F.Supp. 54 (D.Md.1977) for the proposition that legislative investigations are not protected by legislative immunity. How-

ever, *Garmatz* is distinguishable from the instant case because, in *Garmatz,* the defendant claimed the privilege with respect to "any discussion with any interested party which *might* be construed as a part of the information gathering process of a Congressman or of a Congressional committee." *Id.* at 64 (emphasis added). Thus, *Garmatz* does not hold that legitimate legislative investigations are not protected by the Speech or Debate Clause, but rather that discussions which *might* represent fact finding are not necessarily protected.

*v. Daugherty,* 273 U.S. 135, 175, 47 S.Ct. 319, 329, 71 L.Ed. 580 (1927).

### B.

Since we have determined that, as a general matter, legislative fact-finding falls within the protected legislative sphere, the second question we must decide in the instant case is whether Lee's activities constituted legislative fact-finding so as to trigger the protection of legislative immunity. Although the district court concluded that Lee's conversations and meetings in New York and Washington were entitled to immunity, it did so without making any specific factual findings concerning the legislative nature of these activities. Rather, the district court held that since Lee's travel and meetings were "*'apparently* being performed' as part of the 'legislative function'*"*, the government could not inquire into whether Lee's "actions were or were not 'legislative in fact.'" App. at 47. In essence, the district court held that the legislative privilege protects not only legislative acts, but also acts which are *purportedly* or *apparently* legislative in nature. We disagree.

■ It is undisputed that legislative immunity precludes inquiry into the motives or purposes of a legislative act. *United States v. Johnson,* 383 U.S. 169, 180, 86 S.Ct. 749, 755, 15 L.Ed.2d 681 (1966). In general, however, the cases interpreting the Speech or Debate Clause in which legislative immunity has been triggered have involved manifestly legislative acts; acts which were so clearly legislative in nature that no further examination had to be made to determine their appropriate status. *See, e.g., United States v. Helstoski,* 442 U.S. 477, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979) (introducing proposed legislation); *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (subpoenaing records for committee hearing); *Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (inserting material in the Congressional Record); *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (introduc-

ing evidence during committee hearings); *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966) (delivering a speech on the floor of the House); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (interrogating witnesses during committee hearings); *Kilbourn v. Thompson,* 13 Otto 168, 103 U.S. 168, 26 L.Ed. 377 (1881) (voting on resolutions). While such manifestly legislative acts may have been pursued and accomplished for illegitimate purposes, such as personal gain, the acts themselves were obviously legislative in nature. It is the very legislative character of these acts which triggers the protection of legislative immunity.

■ In the instant case, Lee argues that his "conversations" and "meetings" in New York and Washington with various officials were likewise protected by legislative privilege. However, Lee's private conversations do not, in and of themselves, trigger the legislative privilege because they are not manifestly legislative acts. Private conversations—even between officials of governments—do not necessarily involve official business. It is the content of Lee's private conversations, and not the mere fact that the conversations took place, that determines whether Lee is entitled to legislative immunity. In order for Lee's conversations to trigger the protection of legislative immunity, they must have involved legislative fact-finding. Although Lee maintains that his meetings and conversations were official in nature, and did involve information gathering, such assertions cannot preclude a court of competent jurisdiction from determining whether Lee's conversations were, in fact, legislative in nature so as to trigger the immunity. As the Court in *Eastland, supra,* emphasized, legislative immunity is an absolute bar to interference, "once it is determined that members are acting within the 'legitimate legislative sphere'", 421 U.S. at 503, 95 S.Ct. at 1821.

The Supreme Court's decision in *United States v. Helstoski,* 442 U.S. 477, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979), is also instruc-

tive in this regard. In *Helstoski,* the Court concluded that conversations concerning *past* legislative issues are protected by the Speech or Debate Clause, but that conversations concerning a *future* legislative act are not protected since "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate' ". *Id.* at 490, 99 S.Ct. at 2440. Thus, implicit in the majority's holding is the recognition that an initial inquiry is necessary to determine if a conversation, purportedly legislative in nature, involved a past legislative issue so as to trigger legislative immunity, or a future legislative issue, which offers no protection. Indeed, the majority in *Helstoski* expressly held that, even where a conversation includes a discussion of both legislative acts and non-legislative acts, the conversation can be examined and the immunized aspects of the conversation deleted. In response to Justice Stevens' dissenting remark that a distinction between past and future legislative issues is illogical because "it will allow a member of Congress effectively to immunize himself from conviction simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible", *id.* at 498, 99 S.Ct. at 2444, the majority held that:

> Nothing in our opinion, by any conceivable reading, prohibits excising references to legislative acts, so that the remainder of the evidence would be admissible. This is a familiar process in the admission of documentary evidence. Of course, a Member can use the Speech or Debate Clause as a shield against prosecution by the Executive Branch, but only for utterances within the scope of legislative acts as defined in our holdings.

*Id.* at 488 n. 7, 99 S.Ct. 2439 n. 7.

Significantly, these same principles found expression in this Court's opinion in *In re Grand Jury* (Intervenor A), 587 F.2d 589 (3d Cir.1978). In *Grand Jury,* this Court upheld the district court's denial of a motion to quash a subpoena which sought from the Clerk of the House of Representatives the telephone toll records of Congressman Eilberg. Eilberg argued that since some of his phone calls concerned legislative acts and some involved purely personal business, the Speech or Debate Clause prohibited the disclosure of all the calls. Such a policy, Eilberg contended, would protect legislators from the executive branch harassment entailed in rummaging through partially privileged records. Eilberg further argued that even if the entire telephone toll record was not privileged, that the agency seeking the subpoena should be required to establish beforehand which parts of the record are non-privileged, and the court should permit a subpoena only for the non-privileged parts.

This Court rejected both arguments. We held, as an initial matter, that "[o]nly the use against the Congressman of those portions which record such legislative acts offends the Speech or Debate Clause". *Id.* at 596. We went on to hold that the records must be given over to the United States Attorney so that the Attorney could separate the legislative calls from the personal calls. Thus, in *Grand Jury,* we sanctioned a preliminary inquiry into the nature of a purportedly legislative act to determine whether the act was, in fact, protected by legislative immunity. In so holding, we also recognized that "[u]nlike privileges such as attorney-client, physician-patient, or priest-penitent, the purpose of which is to prevent disclosures which would tend to inhibit the development of socially desirable confidential relationships, the Speech or Debate privilege is at its core a *use privilege.*" *Id.* at 596 (citations omitted) (emphasis added).

The district court, in ruling for Lee, neither cited nor referred to these authorities. Rather, relying for its ruling entirely on *United States v. Dowdy,* 479 F.2d 213 (4th Cir.), *cert. denied,* 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (1973), the district court held that, so long as Lee's conversations purportedly involved legislative fact-finding, legislative immunity barred any inquiry into whether the conversations actually involved legislative fact-finding. The Fourth Circuit in *Dowdy* had stated that

the Speech or Debate Clause "forbids inquiry into acts which are purportedly or apparently legislative, even to determine if they are legislative in fact." *Id.* at 226.

■ While the language appears to have broad implications, we read it narrowly in light of the particular facts involved in *Dowdy.* Dowdy, a Chairman of the House Subcommittee on Investigations for the Committee on the District of Columbia, was charged with orchestrating a sham investigation. The investigation itself, however, was clearly within the scope of his authority as subcommittee chairman. The government sought to show that Dowdy's motives for conducting the investigation were illicit. Such an inquiry, however, into the motivation for an admittedly legislative act, is precisely what the Speech or Debate Clause forbids. *See United States v. Brewster,* 408 U.S. at 525, 92 S.Ct. at 2544. No matter how illicit Dowdy's motives were, the act of conducting the investigation would still be a legislative one. Here, in contrast, it is Senator Lee's purpose or motive that will determine in part whether the trip was a legislative act at all. Thus, the government here does not seek to inquire into motives for a legislative act, but rather questions whether certain legislative acts were in fact taken, and whether other non-legislative acts were misrepresented as legislative.

Our narrow reading of *Dowdy* is supported by the decision in *Helstoski, Eastland,* and *Grand Jury,* all of which would conflict with the expansive interpretation of *Dowdy* pressed by Senator Lee. Therefore, to the extent that the *Dowdy* decision would bar inquiry into purportedly legislative acts for the purpose of determining whether the acts are, in fact, legislative, we decline to follow it.

Accordingly, on remand, it will be the task of the district court at the outset to determine which acts were proper legislative acts and which were personal and non-legislative acts. We are, of course, at a disadvantage at this stage of the proceedings in prescribing precise instructions for the district court, since we do not know, any more than the district court knows, the exact nature of the proofs which will be offered by the government. Nor do we know whether, or how, any of such proofs will be rebutted by Lee. Despite our lack of knowledge of the manner in which the government intends to prove its charges, we can anticipate that in some instances there will be a dispute as to whether particular events, conferences, disbursements, or conversations came within the ambit of legislative fact-finding or were personal or non-legislative in character.

■ It will initially be for the district court, outside the presence of the jury (either during or prior to trial), to make that determination. Since Senator Lee is asserting a legislative privilege, the burden of establishing the applicability of legislative immunity, by a preponderance of the evidence, rests with him. *In re Grand Jury, supra,* 587 F.2d at 597.

The crime charged in Count I, misrepresentation of a material fact, derives directly from Senator Lee's submission of a request for reimbursement. Clearly the request in itself is not legislative. In order to determine whether there was a misrepresentation, however, the court must necessarily inquire into the nature of Senator Lee's activities during the trip. Any activities that are legitimate legislative acts are entitled to speech or debate immunity. Therefore, Senator Lee may seek to establish outside the presence of the jury, by a preponderance of evidence, that particular meetings and events, or even the trip as a whole, were legitimate legislative acts.[11]

---

11. The suggested procedure outlined in the text is guided by the precise nature of the charges here, which require balancing of legislative and personal activities. If the allegation in this case were that during the trip Senator Lee had offered someone a bribe, e.g., in connection with his land development project, *cf. Helstoski, su-* pra, or had done something in itself improper, there could be little question that evidence of the bribe or other impropriety would be admissible no matter how much of the rest of the trip was devoted to legislative fact-finding. In that situation, guilt could be established without reference to legislative acts. But the allegation

If the court determines that a particular meeting or event constitutes a legislative act, i.e., that it contained a significant legislative component, then legislative immunity attaches and that particular activity is not admissible in the prosecution, *see United States v. Helstoski, supra*, unless Lee himself seeks to introduce it. If, after consideration of the legislative and non-legislative acts performed, Senator Lee has established by a preponderance of the evidence that the legislative component of the trip was significant and bona fide and that the trip would not have been taken but for the legislative act involved, and that the trip was not improperly extended in order to obtain reimbursement for non-legislative acts, then the court would be obliged to dismiss the indictment.[12] Since it is not a criminal offense to discuss some personal matters during a legislative fact-finding meeting, or to attend to some personal business during the free time on an otherwise legitimate legislative fact-finding trip, a meeting or trip may be deemed immune even though some personal exchanges transpired.

If Senator Lee fails to establish that the trip as a whole is entitled to legislative immunity, the trial will proceed. The district court will then be required to rule on the materiality element of 14 V.I.C. § 843(2).[13] *See supra* n. 4. It will be for the district court to determine as a matter of law whether the alleged concealment or falsification of Lee's non-legislative personal activities was "material" as it impacted upon Lee's request for reimbursement.[14] If the district court concludes that the evidence of non-legislative acts is "material", then, under appropriate instruction, it will submit the issue to the jury.

The jury then would have to make the conventional determinations on the issue of misrepresentation, including that of the defendant's intent. The defendant may introduce evidence of particular legislative acts to counter the government's evidence, but the government may not inquire into the motives for those particular acts that the court has determined to be legitimately legislative. *United States v. Brewster*, 408 U.S. at 525, 92 S.Ct. at 2544.

This procedure balances the legislative interest in protection from prosecution for legislative acts and the executive interest in punishing fraudulent reimbursement claims. If Senator Lee can establish to the court that his trip was legislative, i.e., that the legislative component of the trip was significant and bona fide and that the trip would not have been taken but for the legislative act involved, he is immune. If the prosecution can prove beyond a reasonable doubt that even after discounting his reimbursement request by 25%, Senator Lee misrepresented the nature of the trip in seeking reimbursement for the other

---

here is that, even allowing for Senator Lee's own 25% discount for admittedly personal expenses. Senator Lee misrepresented the purpose of his trip. Any determination of guilt or innocence, then, will require some reference to legislative acts.

**12.** The inquiry into the trip as a whole is a function of the government's decision to frame its indictment in those terms.

**13.** Our conclusion that the materiality determination in 14 V.I.C. § 843 is a question of law, rather than one of fact, is largely influenced by this Court's decision in *United States v. Greber*, 760 F.2d 68 (3d Cir.1985). In *Greber*, the defendant was convicted under 18 U.S.C. § 1001 for making false statements to a government agency. 18 U.S.C. § 1001, which, in relevant part, is identical to 14 V.I.C. § 843(2), provides criminal penalties for any individual who "knowingly and willfully falsifies, conceals or

covers up by any trick, scheme, or device a material fact...." In *Greber*, we held that the materiality determination required by 18 U.S.C. § 1001 was a question of law. Since 18 U.S.C. § 1001 and 14 V.I.C. § 843 are virtually identical statutes, we conclude that the materiality element in 14 V.I.C. § 843 is a question of law to be answered by the court and not by the jury.

Materiality, in the misrepresentation context, usually goes only to whether the misrepresentation was of sufficient import to be capable of fraudulently inducing action. *Id.* at 73 (setting out meaning of misrepresentation in section 1001).

**14.** In connection with the materiality inquiry, the fact that Lee sought reimbursement for only 75% of the expenses incurred, should be taken into account. *See supra* n. 3.

75%, it will be for the jury to determine his guilt. Thus, under this procedure all those events, meetings, or trips that are legitimate legislative acts will enjoy immunity, but the cloak of immunity will not serve as a shield for non-legislative acts.[15]

Thus, in this case, our dispositive holding is not expansive: we simply hold that it is proper to look into a purported legislative act of fact-finding in order to determine if it is, indeed, a legislative act which is privileged, or whether it is an act which falls outside any legislative immunity. The district court, by refusing to allow that critical inquiry, erred. Hence, the district court's dismissal of Count I will be reversed.

### IV.

After the district court dismissed Count I, it also dismissed, pursuant to Fed.R. Crim.P. 48(b)[16], Counts II, III, and IV. These counts were then severed. The district court judge ordered the government to go forward and try Counts II, III and IV despite the government's expressed intention to appeal the dismissal of Count I. The counts to be tried involved two alleged forged restaurant stubs and perjury related to the forgeries. The district court explained that the government could prove these counts with evidence independent from that which would be introduced in a trial on Count I.

The government, however, declined to go forward and sought a stay pending appeal, or, in the alternative, a dismissal without prejudice. The district court denied this application.[17] Prior to this refusal, the prosecution had ignored schedules set by the court for discovery, production of *Brady* material, and *in camera* review of the government's interview notes. The court expressly warned the prosecution that if it continued to delay, he would dismiss the case. App. at 294, 298.

A Rule 48(b) dismissal may be reversed only upon a showing that the district court abused its discretion. *United States v. Aberson,* 419 F.2d 820 (2d Cir.) *cert. denied,* 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970). Some circuits require that a dismissal with prejudice be preceded by a warning. *United States v. Towill,* 548 F.2d 1363 (9th Cir.1977). Here, the prosecution was warned, and we cannot say that the district court abused its discretion. Nevertheless, because the dismissal of Count I has been reversed and the case remanded, and because the district court may have been influenced in part in pressing forward with Counts II, III and IV because it was dismissing Count I, we will vacate the dismissal of Counts II, III and IV out of an abundance of caution, in order that the district judge may reconsider his decision in light of our present ruling on Count I.[18]

---

**15.** Requiring Senator Lee to establish his entitlement to speech or debate immunity does not itself infringe the privilege, which, as we have explained, is only one of non-testimonial use; rather such procedure serves only to determine the applicability of the privilege and so to vindicate it in an appropriate case. *See In re Grand Jury, supra,* 587 F.2d at 597. The reason that an *in limine* hearing or sidebar proceeding may be appropriate in this kind of case is that legislative fact-finding is not patently obvious legislative activity and, therefore, an inquiry into the true character of the events in question may be required.

**16.** Fed.R.Crim.P. 48(b) provides:

If there is unnecessary delay in presenting the charge to a grand jury or in filing any information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant

to trial, the court may dismiss the indictment, information or complaint.

**17.** At this point in the trial, approximately 100 prospective jurors had already been called to court.

**18.** Lee presents the alternative arguments that this court should (1) dismiss Counts II and III on the alternate ground that the falsified documents (restaurant stubs) were not receipts within the meaning of 14 V.I.C. § 791(2); (2) dismiss Count IV because Lee's testimony was not given on an occasion when an oath may be lawfully administered; and (3) dismiss Counts I, II, III, and IV because the United States Attorney failed to proceed by grand jury indictment.

On May 31, 1983, the district court considered these arguments and rejected them. We recognize that these alternative arguments are prop-

## V.

The district court's orders of May 31, 1983 will be reversed and the case remanded to the district court for further proceedings consistent with the foregoing opinion.

erly before this Court despite Lee's failure to file a cross-appeal. *See Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805 (3d Cir.1981).

However, like the district court, we find Lee's contentions unpersuasive.