**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2536
_____

UNITED STATES OF AMERICA

v.

WAYNE A.G. JAMES,

Appellant
_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-15-cr-00042-001
District Judge: The Honorable Curtis V. Gomez
_____

Argued December 12, 2017

Before: SMITH, *Chief Judge*, McKEE, and SCIRICA,
*Circuit Judges*

(Filed: April 23, 2018)

Luke V. Cass
Amanda R. Vaughn
Justin D. Weitz
United States Department of Justice
Criminal Division
Public Integrity Section
1400 New York Avenue, NW
Washington, DC  20005

Nelson L. Jones
Delia L. Smith
Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI  00802

John-Alex Romano
Vijay Shanker                    **[ARGUED]**
United States Department of Justice
Appellate Section
Room 1264
950 Pennsylvania Avenue, NW
Washington, DC  20530

    *Counsel for Appellee*

Brendan A. Hurson  **[ARGUED]**
Kia D. Sears
Office of Federal Public Defender
1336 Beltjen Road
Suite 202
Tunick Building
St. Thomas, VI  00802

Omodare B. Jupiter
Office of Federal Public Defender
4094 Diamond Ruby
Suite 5
Christiansted, VI  00820

*Counsel for Appellant*

_____

OPINION

_____


SMITH, *Chief Judge.*

## I. INTRODUCTION

This appeal requires us to further define the contours of the legislative immunity provided to Virgin Islands legislators under 48 U.S.C. § 1572(d). Under that federal statute, legislators are protected from being "held to answer before any tribunal other than the legislature for any speech or debate in the legislature."  48 U.S.C. § 1572(d). In light of

the rich tradition of protecting free and open legislative debate—a tradition with historical roots reaching back to monarchical disputes with the British Parliament—courts must be vigilant to apply the protections of § 1572(d) to their fullest extent.

Yet despite the importance of legislative immunity, § 1572(d) offers only a limited exception to the general rule that the law applies equally to both those who make the law and those who are empowered to elect their lawmakers. In this appeal, a former Virgin Islands senator accused of violating two criminal statutes argues that § 1572(d) shields him from prosecution. Because we conclude that the conduct underlying the Government's allegations in this case is clearly not legislative conduct protected by § 1572(d), we hold that the former senator may stand trial. The District Court's denial of the former senator's motion to dismiss or suppress will therefore be affirmed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3241. We have jurisdiction over this interlocutory appeal under the collateral order doctrine. *United States v. Menendez*, 831 F.3d 155, 164 (3d Cir. 2016); *United States v. McDade*, 28 F.3d 283, 288 (3d Cir. 1994). We review the District Court's legal conclusions *de novo*, and its factual determinations for clear error. *Menendez*, 831 F.3d at 164.

### III. BACKGROUND

In October of 2015, a grand jury returned a three-count indictment charging former Virgin Islands Senator Wayne James with two counts of wire fraud under 18 U.S.C. § 1343,[1] and one count of federal programs embezzlement under 18 U.S.C. § 666(a)(1)(A).[2] These charges stemmed from

---

[1] 18 U.S.C. § 1343 provides in part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

[2] 18 U.S.C. § 666 provides in part:

(a) Whoever, if the circumstance described in subsection (b) of this section exists--
(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--

James' use of legislative funds to ostensibly obtain historical documents from Denmark related to the Fireburn—an 1878 uprising in St. Croix,[3] which at the time was part of the

> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
> (i) is valued at $5,000 or more, and
> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency. . . .
> shall be fined under this title, imprisoned not more than 10 years, or both.
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. 18 U.S.C. § 666.

[3] Although slavery had been abolished in the Danish West Indies in 1848, strict labor laws meant that former slaves continued to work under harsh conditions. These conditions led to the civil unrest that ultimately culminated with the 1878 Fireburn. During the Fireburn,

Danish West Indies. Although James argues that he was engaged in legislative fact-finding when he used Legislature funds to secure Fireburn documents, the alleged conduct underlying the indictment is distinct from any legislative activity James might have participated in. Specifically, the indictment charges that James misused funds in four respects, by: (1) obtaining cash advances from the Legislature but retaining a portion of those funds for his personal use; (2) double-billing for expenses for which he had already received a cash advance; (3) submitting invoices and receiving funds for translation work that was never actually done; and (4) submitting invoices and receiving funds for translation work that was completed before his election to the Legislature. JA 34–35.

In February of 2017, James filed a motion to dismiss the indictment on legislative immunity grounds, or, in the alternative, to suppress evidence. JA 40. The District Court heard oral arguments on the motion, and ultimately denied James' motion without prejudice in order to allow James to supplement the record with additional documents. James supplemented the record and participated in an additional hearing before the District Court, but nonetheless failed to

---

three female leaders led a labor revolt that resulted in the burning of sugar fields and plantations throughout the town of Frederiksted in St. Croix. *See* Martin Selsoe Sorensen, *Denmark Gets First Public Statue of a Black Woman, a 'Rebel Queen'*, N.Y. TIMES (Mar. 31, 2018), https://www.nytimes.com/2018/03/31/world/europe/denmark-statue-black-woman.html.

persuade the District Court to grant his motion. James then sought interlocutory appeal, and in April of 2017 this Court dismissed the case for lack of appellate jurisdiction. *United States v. James*, 686 F. App'x. 128, 129 (3d Cir. 2017). We did so because the District Court's oral order was not a "definitive decision . . . on the speech-or-debate issue." *Id.* We therefore "encourage[d] the District Court to enter a final decision and order on the defendant's motion, taking into account the supplemental materials and making whatever formal findings of fact that are necessary." *Id.*

On remand in July of 2017, the District Court issued an oral order denying James' motion. James Supp. App. 79, 81 ("The Court is certainly appreciative of the defense's position, but is not persuaded by it. . . . [T]he Court doesn't find that [James' actions] are even close to legislative acts. . . . [T]he Court is hard-pressed to find anything that comes close to an allegation that would implicate legislative activity."). In October of 2017, the District Court issued a written memorandum outlining the rationale behind its oral decision to deny James' motion. Case 3:15-cr-000042-CVG-RM, ECF No. 164. In the memorandum, the District Court explained that James' actions were ultimately not legislative acts worthy of statutory protection under the Organic Act of the Virgin Islands. This appeal followed.

## IV. JAMES' ALLEGED ACTIONS ARE NOT PROTECTED

The Organic Act of the Virgin Islands functions as a constitution for the Virgin Islands, and vests "[t]he legislative power and authority of the Virgin Islands" in a legislature "consisting of one house." 48 U.S.C. § 1571(a). Members of

the legislature are "known as senators."  48 U.S.C. § 1571(b). In order to provide these senators with a form of legislative immunity, the Organic Act of the Virgin Islands contains language similar to the Speech or Debate Clause contained within Article I § 6 of the United States Constitution.[4] Specifically, 48 U.S.C. § 1572(d) provides the following protection to senators of the Virgin Islands:

> No member of the legislature shall be held to answer before any tribunal other than the legislature for any speech or debate in the legislature and the members shall in all cases, except treason, felony, or breach of the peace, be privileged from arrest during their attendance at the sessions of the legislature and in going to and returning from the same.

48 U.S.C. § 1572(d). Since James is asserting this legislative privilege, "the burden of establishing the applicability of legislative immunity, by a preponderance of the evidence, rests with him." *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 524 (3d Cir. 1985). A court must dismiss an indictment if the indictment relies on protected legislative acts, *see id.* at 525,

---

[4] U.S. CONST. ART. I § 6 ("The Senators and Representatives shall . . . in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.").

or if there was a "wholesale violation of the speech or debate clause before a grand jury" such that the privileged material "cannot be excised." *United States v. Helstoski*, 635 F.2d 200, 205 (3d Cir. 1980). As explained below, neither the indictment nor grand jury proceedings violate 48 U.S.C. § 1572(d).

## A. *The Indictment*

This Court has previously stated that "the interpretation given to the Speech or Debate Clause of the Federal Constitution, while not dispositive as to the meaning of the legislative immunity provision for the Virgin Islands, is, nevertheless, highly instructive." *Lee*, 775 F.2d at 520. One helpful case interpreting the Speech or Debate Clause of the Federal Constitution is *Gravel v. United States*, 408 U.S. 606 (1972). There, the Supreme Court declared that the clause protects "speech or debate in either House," as well as "other matters" that are "an *integral* part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625 (emphasis added).

To assist in determining what types of actions are "an integral part of the deliberative and communicative processes," the Third Circuit has established a "two-step framework for identifying legislative acts protected by the Speech or Debate Clause." *Menendez*, 831 F.3d at 166. The first step is to "look to the form of the act to determine

10

whether it is inherently legislative or non-legislative." *Id.* If "an act is neither manifestly legislative nor clearly non-legislative, then it is ambiguously legislative," and a court must accordingly proceed to the second *Menendez* step. *Id.* This second step requires a court to "consider the content, purpose, and motive of the act to assess its legislative or non-legislative character." *Id.*

Applying the first *Menendez* step to the case at hand, we conclude that the conduct for which James has been criminally charged is inherently non-legislative. This is not a close call. In providing examples of inherently non-legislative actions,[5] *Menendez* explicitly mentioned "illegitimate activities such as accepting bribes in exchange for taking official action." *Id.* We have noted that "[e]ven if these non-legislative acts involve policy or relate to protected legislative activity, they are not protected." *Id.*; *see also United States v. Brewster*, 408 U.S. 501, 526 (1972) ("Taking a bribe is,

---

[5] *United States v. Menendez*, 831 F.3d 155, 166 (3d Cir. 2016) ("On the other side of the spectrum, some acts are so clearly non-legislative that no inquiry into their content or underlying motivation or purpose is needed to classify them. Examples include legitimate constituent services such as "the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress," *Brewster*, 408 U.S. at 512, and, of course, illegitimate activities such as accepting bribes in exchange for taking official action, *id.* at 526.").

11

obviously, no part of the legislative process or function; it is not a legislative act.").

The conversion of legislative funds to personal use is similar to collecting bribes. James' alleged conversion of those funds falls squarely within the category of "illegitimate," and such actions are inherently non-legislative. The actions complained of in the indictment are not James' informal fact-finding actions, but are instead illicit activities that are at most tangential to such informal fact-finding. Specifically, the indictment alleges that James (1) retained portions of legislative funds for his own personal use; (2) double-billed for expenses; (3) submitted invoices and received funds for translation work that was never actually done; and (4) submitted invoices and received funds for translation work that was completed prior to his election. JA 34–35. We hold that these actions are the types of "illegitimate activities" comparable to "accepting bribes" that *Menendez* referred to as inherently non-legislative and therefore unprotected.

Although these actions might be tangentially related to the types of informal fact-finding actions in which James participated, the indictment is not concerned with any actual fact-finding efforts that James performed. Rather, the indictment focuses on James' use of legislative funds in ways that *diverged* from any legitimate legislative goal. *See* Gov't Br. 52 (noting that "the Government has never offered" bills and committee hearings referred to by James into evidence, nor do they "appear [any]where in the indictment," and further stating that "there are no 'Fireburn documents' at the

12

heart of the Government's case. It is the absence of any such documents that forms the basis of the indictment.").

In concluding that James' alleged actions are inherently non-legislative, we are guided by the Supreme Court case of *United States v. Brewster*, 408 U.S. 501 (1972). In that case, a former United States Senator was indicted for accepting a bribe. *Id.* at 502. In holding that the Federal Constitution's Speech or Debate Clause did not prohibit the federal bribery charges at issue in that case, the Supreme Court drew a distinction between (a) the former Senator's acceptance of the bribe (*i.e.*, the illegal conduct) and (b) the performance of the illegally promised conduct (*i.e.*, the legislative act). As the Court explained:

> The question is whether it is necessary to inquire into how appellee spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute. The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.

*Id.* at 526.

James' alleged conduct can be similarly distinguished from any types of legislative acts that might be protected under 48 U.S.C. § 1572(d). Although we reaffirm this Court's

13

previous conclusion that "as a general matter, legislative fact-finding is entitled to the protection of legislative immunity,"[6]

---

[6] *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 517 (3d Cir. 1985). The *Lee* Court made clear that "fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity." *Id.* at 521. Moreover, *Lee* can fairly be read to not only encompass "formal" fact-finding efforts—such as legislative hearings or subpoenas—but also so-called "informal" fact-finding efforts. The facts in *Lee* itself involved an informal trip to New York and Washington that was purportedly legislative in nature, and the *Lee* Court cited favorably to precedent from the United States Court of Appeals for the District of Columbia, which stated that "[t]he acquisition of knowledge through *informal* sources is a necessary concomitant of legislative conduct *and thus should be within the ambit of the privilege* so that congressmen are able to discharge their constitutional duties properly." *Lee*, 775 F.2d at 521 (quoting *McSurely v. McClellan*, 553 F.2d 1277, 1286–87 (D.C. Cir. 1976)) (emphasis added). We also note that James has additionally directed our attention to persuasive precedent supporting the proposition that legislative immunity extends to "informal" fact-finding. *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 54 (D.D.C. 2007) ("The Members are correct that, under the law of this and other circuits, informal

the various ways that James is alleged to have converted Legislature funds to his own personal use can be separated from any informal fact-finding that might have otherwise served a legitimate legislative purpose. As the District Court ultimately concluded in its memorandum, "[t]he prosecutors may simply demonstrate that payments were made to James that were unwarranted and illegal. Thus, any evidence regarding the Fireburn legislation can be excised from the prosecution." Case 3:15-cr-000042-CVG-RM, ECF No. 164, at 28. We agree with the District Court. A careful examination of the specific conduct underlying the indictment in this case (*i.e.*, illegal conversion of legislative funds) reveals that, as in *Brewster*, a conviction could be sustained without "inquir[ing] into the [legislative] act or its motivation." *Brewster*, 408 U.S. at 527; *see also United States v. Helstoski*, 635 F.2d 200, 206 (3d Cir. 1980) ("All that is required is that in presenting material to the grand jury the prosecutor uphold the Constitution and refrain from introducing evidence of past legislative acts or the motivation for performing them."); *United States. v. Helstoski*, 576 F.2d 511, 517 (3d Cir. 1978) ("We think *Brewster* compels the

information gathering in connection with or in aid of a legitimate legislative act is itself protected by the Speech or Debate Clause."). But although James' purchasing of Fireburn documents could qualify as informal fact-finding, the indictment is not concerned with such conduct. Rather, the indictment charges James with participating in inherently non-legislative acts of converting Legislature funds to personal use.

15

conclusion that the indictment in the case before us does not violate the Speech or Debate Clause. . . . [T]o establish a prima facie case, the government need not show any of the legislative acts for which the defendant allegedly accepted payments.").

Even if we were to conflate James' allegedly illegal actions with his informal fact-finding—such that we understood his actions to be "ambiguously legislative"—the second step in *Menendez* requires us to "consider the content, purpose, and motive of the act to assess its legislative or non-legislative character." *Menendez*, 831 F.3d at 166. James takes issue with such a "second-guessing" of his motives. James Br. 32 ("[T]he government's allegations rest entirely on a forbidden evaluation of a legislator's motives for performing the manifestly legislative act of fact-finding. Where, as here, a case rests on legislative actions, no further inquiry is permitted into a legislator's alleged motives for those actions."). Clear precedent from this Court, however, requires us to look beyond James' own characterization of his conduct.

In *Lee*, we made clear that legislative immunity "does not bar an inquiry into whether a legislator's activities and conversations were, in fact, legislative in nature." *Lee*, 775 F.2d at 517. We explained that "[a]lthough Lee maintains that his meetings and conversations were official in nature, and did involve information gathering, such assertions cannot preclude a court of competent jurisdiction from determining whether Lee's conversations were, in fact, legislative in nature so as to trigger the immunity." *Id.* at 522. Our "dispositive holding" in *Lee* was therefore "that it is proper to

16

look into a purported legislative act of fact-finding in order to determine if it is, indeed, a legislative act which is privileged, or whether it is an act which falls outside any legislative immunity." *Id.* at 526.

Examining James' motives reveals that even in instances where he allegedly used legislative funds to pay for Fireburn materials, James appears to have done so because of personal interests that were unrelated to his job as a legislator. In some instances, for example, James allegedly obtained legislative funds to pay for translation work that he had requested in 2006—before he had even been elected to the legislature.[7] Gov't Br. 7 ("Despite owing money to Kalhoj for over two years before becoming a senator, [James] submitted an invoice to the Legislature in 2009 to get the money to pay his debt. . . . [James emailed Kalhoj stating] that 'I don't recall when the work was commissioned, so please just put today's date on both invoices.'") (citing Gov't Supp. App. 24)). In other instances, James is alleged to have sought Fireburn documents in order to write a personal screenplay about a historical love affair. Gov't Supp. App. 28 ("It was this reference in this book that led me to do the research. I think it will make a great movie. I will do a screenplay when I get the 130 pages of translated documents from the Danish Archives."); Gov't Supp. App. 31 ("As I indicated, I am going to Cannes in May (as the guest of the mayor of the town). I will write up a screenplay and shop it around while at the Film Festival."). Therefore, even if we

---

[7] James was elected to the legislature in 2008, and served from 2009 to 2011.

17

were to conflate James' alleged illegal actions (*e.g.*, double billing, etc.) with acts that he argues were legislative in nature (*i.e.*, researching Fireburn documents for future legislation) such that we found James' actions to be "ambiguously legislative," examining James' motives under *Menendez's* second step reveals that those actions were personal—rather than legislative—in nature. Such personal actions are not protected under 48 U.S.C. § 1572(d). *See Brewster,* 408 U.S. at 516 ("Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make Members of Congress super-citizens, immune from criminal responsibility.").

To conclude, nothing in the indictment requires the Government to prove any legislative acts at trial. To the contrary, the indictment relies upon how James' alleged conduct *diverged* from what he purported to be doing officially. *See, e.g.*, JA 34 (referring to the wire fraud charges of Counts I and II and stating that "[t]he purpose of the scheme to defraud was to enrich the defendant, WAYNE A.G. JAMES, by appropriating Legislature funds for JAMES'[] own personal use and benefit"); JA 36 (Referring to the federal program embezzlement charge in Count III and stating that "JAMES obtained . . . Government of the Virgin Islands funds based on false representations that the money be used to fund historical research, when in fact JAMES appropriated a portion of the money to his own use"). Because the indictment does not rely upon protected legislative acts, it does not violate the protections offered to legislators under 48 U.S.C. § 1572(d).

18

## B. *The Grand Jury Proceedings*

As explained in Part IV.A. above, the indictment does not depend on the Government establishing that James completed particular legislative acts—it merely requires showing that James illegally converted legislative funds to his own personal use. But a legal indictment does not end our analysis. As we wrote in *Menendez*, the Speech or Debate Clause "create[s] a privilege against the use of 'evidence of a legislative act' in a prosecution *or* before a grand jury." *Menendez*, 831 F.3d at 165 (emphasis added) (citations omitted) (quoting *United States v. Helstoski*, 442 U.S. 477, 487 (1979)). The grand jury proceedings in this case included questioning that, arguably, was impermissibly related to legislative acts. Specifically, James complains of the questioning of his "top legislative aid"[8] and references to

---

[8] At least in some instances, legislative immunity extends to legislative aids acting on behalf of a legislator. *See Gravel v. United States*, 408 U.S. 606, 616–17 (1972) ("We agree with the Court of Appeals that for the purpose of construing the privilege a Member and his aide are to be 'treated as one,' *United States v. Doe*, 455 F.2d[ 753,] 761 [(1st Cir. 1972)]. . . . [I]t is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants; that the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the

19

"communications between Mr. James and at least one other legislator describing his research and its role in crafting legislation Mr. James later introduced." James Br. 36.

Assuming, *arguendo*, that James' characterization of the grand jury proceedings is accurate,[9] the isolated instances he identifies do not rise to the level of a "wholesale violation of the speech or debate clause before a grand jury" that this Court has previously held to necessitate the dismissal of an indictment. *United States v. Helstoski*, 635 F.2d 200, 205 (3d Cir. 1980). In *Helstoski*, we wrote that "[i]t can be argued that implicit in the [Supreme] Court's holdings that the [*Brewster*

---

latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause—to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary—will inevitably be diminished and frustrated.") (internal citations removed).

[9] James provides no record citation when he complains of the "communications between Mr. James and at least one other legislator describing his research and its role in crafting legislation Mr. James later introduced." *See* James Br. 36. Our independent review of the record, including the email between James and then-Senate President Louis Hill, JA 74, reveals no violations of the Speech or Debate Clause that even come close to the violations identified in *Helstoski*. *See United States v. Helstoski*, 635 F.2d 200, 202 (3d Cir. 1980).

20

and *Johnson*][10] cases could be tried without reference to protected matters was the conclusion that the grand juries' considerations of the privileged material were not fatal to the indictments." *Id*. Aligning with *Helstoski*, at least two of our sister circuits have similarly concluded that minor references to legislative acts during the grand jury process do not require the dismissal of an otherwise valid indictment. *See United States v. Renzi*, 651 F.3d 1012, 1029 (9th Cir. 2011) ("Still, the mere fact that some 'legislative act' evidence was

---

[10] In *United States v. Brewster*, 408 U.S. 501, 503 (1972), a former United States Senator was indicted for accepting a bribe. In *Brewster*, the Supreme Court reversed the district court's dismissal of the indictment then at hand, even though "the indictment charge[d] the offense as being in part linked to Brewster's action, vote and decision on postage rate legislation," in part because the government did not need to "prove any specific act, speech, debate, or decision to establish a violation of the statute under which appellee was indicted." *Id.* at 527–28 (quotation marks omitted).

In *United States v. Johnson*, 383 U.S. 169 (1966), the Supreme Court considered the prosecution of a former Congressman for violation of the federal conflict of interest statute and for conspiracy to defraud the United States. In *Johnson*, the Court held that the government was not precluded from bringing a new trial under the condition that the government remove all references to the Congressman's speech that were "offensive to the Speech or Debate Clause." *Id*. at 185.

21

presented to the grand jury cannot entitle Renzi to dismissal. That would contravene the [Supreme] Court's example in *Brewster* and *Johnson*—two cases in which the Court decided that dismissal of the indictment was not warranted even though each Member was indicted by grand juries to whom the Government had presented 'legislative act' evidence."); *United States v. Swindall*, 971 F.2d 1531, 1548 (11th Cir. 1992) ("A member's Speech or Debate privilege is violated if the Speech or Debate material exposes the member to liability, but a member is not necessarily exposed to liability just because the grand jury considers improper Speech or Debate material. . . . If reference to a legislative act is irrelevant to the decision to indict, the improper reference has not subjected the member to criminal liability. The case can proceed to trial with the improper references expunged.").

In *Helstoski*, we referred to the district court's finding "that evidence violating the speech or debate clause was so extensive that it completely infected those proceedings." *Helstoski*, 635 F.2d at 202. Specifically, evidence used by the government in that case "included testimony concerning Helstoski's motivations for the introduction of private immigration bills, the procedures by which such bills were presented in the House of Representatives, his office procedures for handling such requests, as well as correspondence and files concerning these bills and copies of the bills themselves." *Id*.

Unlike in *Helstoski*, where the violations of the Speech or Debate Clause could not be "excised," *id.* at 205, the case at hand can be tried without reference to any legislative acts. *See also Brewster*, 408 U.S. at 512 ("[A] Member of

22

Congress may be prosecuted under a criminal statute provided that the [g]overnment's case does not rely on legislative acts or the motivation for legislative acts."). To repeat, the Government's allegations underlying the case at hand do not rely on establishing that James performed any legislative acts. Rather, the Government's case relies on establishing that James' actions *diverged* from any genuine legislative act that James may wish to argue he engaged in. In light of that distinction, we agree with the District Court that "any evidence regarding the Fireburn legislation can be excised from the prosecution." Case 3:15-cr-000042-CVG-RM, ECF No. 164, at 28. Moreover, the District Court has correctly identified its trial duty to "exercis[e] its gatekeeper function . . . [by] exclud[ing] and excis[ing] any proposed evidence that runs afoul of the Speech or Debate Clause." *Id.* at 28–29. We therefore hold that neither the indictment nor the grand jury proceedings ran afoul of 48 U.S.C. § 1572(d). The District Court's denial of James' motion will be affirmed.[11]

---

[11] Because we conclude that the alleged conduct underlying the indictment and grand jury proceedings in the case at hand did not constitute legislative conduct protected by 48 U.S.C. § 1572(d), we need not consider whether that federal statute protects Virgin Islands legislators from federal prosecutions in addition to prosecutions brought by co-equal components of the Virgin Islands government.

## V. CONCLUSION

We hold that James' conduct as alleged in the indictment is inherently non-legislative in nature. Neither the indictment nor the grand jury proceedings violated the protections afforded to Virgin Islands legislators by 48 U.S.C. § 1572(d). We therefore will affirm the District Court.