### In re GRAND JURY SUBPOENA.

#### Misc. No. 86–027.

United States District Court, M.D. Pennsylvania.

Jan. 31, 1986.

Joseph F. Moore, Jr., Reed, Smith, Shaw & McClay, Harrisburg, Pa., for plaintiff.

James J. West, U.S. Atty., Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

This case presents what is apparently a question of first impression regarding the power of a federal grand jury to subpoena information from a duly constituted select committee of the state legislature. We are here called upon to decide whether members of the Pennsylvania House of Representatives who are not themselves the target of a federal criminal investigation may assert a privilege of non-disclosure, based on constitutional Speech or Debate considerations, against a federal grand jury subpoena.

The following facts are undisputed.[1] The House of Representatives of the General Assembly of the Commonwealth of Pennsylvania (the House), through its Select Committee to Investigate Compliance With the Steel Products Procurement Act (the Committee) has for approximately a year been investigating, *inter alia*, alleged improprieties concerning the procurement of granite for the expansion of the state capitol in Harrisburg, Pennsylvania. Transcript at 3. More specifically, the claimed wrongdoing has occurred in connection with sole source no-bid contracts, including supply and fabrication agreements. *Id.* That investigation is ongoing, *id.*, and includes fact-finding in the nature of calling witnesses to appear before the Committee as well as conducting interviews through investigators hired by the Committee. *Id.* at 4.

At the invitation of the Pennsylvania Department of General Services,[2] the United States Attorney for the Middle District of Pennsylvania (hereinafter the United States Attorney or the United States) convened a grand jury to investigate the alleged improprieties. Affidavit of James J. West, Pars. 1 and 2. On January 15, 1986, the grand jury issued a subpoena directed to Nicholas Colafella, Representative of the 15th District, in his capacity as Chairperson of the Committee, or to the Records Custodian of the Committee, requesting the production of the following materials:

1. Memos, reports, summaries, interview notes, record review notes, correspondence and any other documents of an investigative nature compiled, adopted, prepared or sent and received by any committee investigator including, but not limited to, the listed individual and companies named on the attached list.

2. Agenda, minutes, summaries and all transcripts of public and private hearings, along with copies of all documents or exhibits referred to in said transcripts, summaries, agenda or minutes during the testimony or in comments by committee members or staff.

1. On January 17, 1986, this court heard oral argument on the instant Motion to Quash Subpoena, following which we stayed enforcement of the subpoena for a period of ten days, later extending the stay through January 31, 1986. At oral argument the parties entered into stipulations of fact, disputing only the legal issues. References herein to the transcript of that proceeding shall be designated as "Transcript".

2. On January 10, 1986, Walter Baran, Secretary of the Department of General Services, wrote to the United States Attorneys for the Western and Middle Districts of Pennsylvania requesting that their offices and the Federal Bureau of Investigation "initiate an immediate criminal investigation in order to ascertain whether any conduct engaged in by or between the ... contractors or subcontractors (involved in the "purchasing, handling and finishing of the granite") are [sic] in violation of Federal or State Law". Letter attached to Affidavit of James J. West, United States Attorney, submitted in opposition to Motion to Quash ("*Schofield* Affidavit").

On January 17, 1986, Nicholas Colafella and several other persons[3] filed the instant Motion to Quash that subpoena, contending that its enforcement would contravene the doctrine of legislative immunity mandated by the Speech or Debate Clause.

■ This court has the power to quash or modify a subpoena duces tecum under Rule 17(c) of the Federal Rules of Criminal Procedure.[4] Courts have emphasized the importance of this power in view of the fact that "[a]lthough grand jury subpoenas are issued in the name of the district court, they are issued pro forma and in blank to anyone requesting them without prior court approval or control". *In re Grand Jury Matters*, 751 F.2d 13, 16 (1st Cir. 1984). Thus, because these subpoenas are "in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch", *In re Grand Jury Proceedings (Schofield I)*, 486 F.2d 85, 90 (3d Cir.1973), practical responsibility for preventing abuse of the subpoena power and for "controlling grand jury excesses" lies with this court. *In re Pantojas*, 628 F.2d 701, 705 (1st Cir.1980); *In re Grand Jury Matters*, 751 F.2d at 16.

■ The Third Circuit has said that because "a presumption of regularity attaches to the grand jury's proceedings, and hence to a grand jury subpoena.... The party objecting to enforcement has the burden of making some showing of irregularity". *Schofield I*, 486 F.2d at 92. However, the United States must make a preliminary showing by affidavit, indicating that each item sought is "(1) relevant to an investigation, (2) properly within the grand jury's jurisdiction, and (3) not sought primarily for another purpose". *In re Grand Jury Proceedings, ("Schofield II")*, 507 F.2d 963, 966 (3d Cir.1975), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The *Schofield* cases "soundly rejected any contention that the district court should 'rubber stamp' petitions for the enforcement of grand jury subpoenas". *Schofield II*, 507 F.2d at 964.

■ The grand jury's investigative powers are "necessarily broad ... [b]ecause its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments". *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972).

Hence, the grand jury's authority to subpoena witnesses is not only historic, but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the longstanding principle that 'the public ... has a right to every man's evidence', except for those persons protected·by a constitutional, common-law, or statutory privilege, is particularly applicable to grand jury proceedings.

*Id.* (Citations and footnote omitted.) Thus, the grand jury's right to "every man's evidence" is substantively limited only by express privileges, although under Federal Rule of Criminal Procedure 17(c) this court may also quash or modify a subpoena which appears to be unreasonable or oppressive in its demands. *In re Grand Jury Matters*, 751 F.2d at 17.

We proceed now to address the claim of privilege at issue in this case, which arises from the Speech or Debate clauses of the United States and Pennsylvania Constitutions. As a preliminary matter, although we note that the federal and state provisions are congruent,[5] we decline to decide

3. The other movants are K. Leroy Irvis, Speaker of the House; James J. Manderino, Majority Leader of the House; Mathew J. Ryan, Minority Leader of the House; and the Bi-Partisan Committee for the Administration of the House.

4. Fed.R.Crim.P. 17(c) provides:
A subpoena may ... command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or excessive.

5. The United States Constitution, Art. I, § 6, cl. 1, provides that "for any Speech or Debate in either House, [the Members of Congress] shall not be questioned in any other place". This language is virtually identical to the provision embodied in the Pennsylvania Constitution, Art. 2, § 15 which states, in reference to the Mem-

this case under the Pennsylvania Constitution, despite movants' urging that we do so. See Movant's Responsive Brief (hereinafter cited as Movant's Brief) at 6–7. In *United States v. Craig,* 528 F.2d 773 (7th Cir.1976) *(Craig I)*, *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976), *concurrence adopted as opinion of en banc court,* 537 F.2d 957 (7th Cir.1976) *(Craig II)*, *cert. denied sub nom. Markert v. United States,* 429 U.S. 999, 97 S.Ct. 526, 50 L.Ed.2d 609 (1976), the court established that the State Constitution was inapplicable to a state legislator's claim of privilege in a federal criminal prosecution. This was so because the Federal Rules of Evidence and the Federal Rules of Criminal Procedure contemplated "that the admissibility of evidence in criminal cases in federal courts would be governed by Federal law and would not be dependent upon diverse state laws, including state constitutional provisions." *Craig I,* 528 F.2d at 776. *See also Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 404, 99 S.Ct. 1171, 1178, 59 L.Ed.2d 401 (1979) (recognition of immunity for state legislators reflected the court's interpretation of federal law; the decision "did not depend on the presence of a speech or debate clause in the constitution of any state"). Accordingly, we do not address the applicability of the Pennsylvania Constitution's Speech or Debate provision.

Furthermore, the Federal Constitution's Speech or Debate provision is not directly applicable to members of a state legislature. *Lake Country Estates,* 440 U.S. at 404, 99 S.Ct. at 1178. However, state legislators may in some circumstances invoke the protection of common law immunity under the federal clause. *Id.; Star Distributors, Ltd. v. Marino,* 613 F.2d 4, 6 (2d Cir.1980); *Craig I,* 528 F.2d at 782 ("The protection afforded state legislators from liability under federal law for acts done in their legislative roles ... is not based upon the speech or debate clause of the Federal Constitution ... a clause that applies only

bers of the General Assembly, that "for any speech or debate in either House they shall not

to Congress, but rather upon the common-law doctrine of official immunity").

Thus, the precise question before this court is whether movants are here entitled to invoke common-law immunity from the effects of the federal grand jury subpoena. Federal Rule of Evidence 501 provides in full that:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, *the privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.* However, in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

F.R.E. 501 (emphasis supplied).

We turn now to an examination of the principles of the common law in the Speech or Debate clause area to determine whether, "in the light of reason and experience", those principles should apply to this case.

The Supreme Court has traced the history and purpose of the Speech or Debate provision thus:

> The privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings has taproots in the Parliamentary struggles of the Sixteenth and Seventeenth Centuries. As Parliament achieved increasing independence from the Crown, its statement of the privilege grew stronger.... In 1689, the Bill of Rights declared in unequivocal language: 'That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be im-

be questioned in any other place".

peached or questioned in any Court or place out of Parliament'.

Freedom of speech and action in the legislature was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation.... The reason for the privilege is clear. It was well summarized by James Wilson, an influential member of the Committee of Detail which was responsible for the provision in the Federal Constitution. 'In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary, that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense'.... The provision in the United States Constitution was a reflection of political principles already firmly established in the States.

*Tenney v. Brandhove,* 341 U.S. 367, 372–73, 71 S.Ct. 783, 786, 95 L.Ed. 1019 (1951). *See also United States v. Helstoski,* 442 U.S. 477, 491–92, 99 S.Ct. 2432, 2440–41, 61 L.Ed.2d 12 (1979); *United States v. Johnson,* 383 U.S. 169, 178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966).

In view of these important functions of the Clause, the cases establish that it is to be read broadly, "to include not only 'words spoken in debate', but anything 'generally done in a session of the House by one of its members in relation to the business before it' ". *Johnson,* 383 U.S. at 179, 86 S.Ct. at 755 (citations omitted); *United States v. Meyers,* 432 F.Supp. 456, 458 (W.D.Pa.1977). While "the heart of the Clause is speech or debate", it also includes other matters which are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House". *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). The Clause "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts", *United States v. Brewster,* 408 U.S. 501, 525, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972), and legislative fact-finding is such a protected act. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1974); *McSurely v. McClellan,* 553 F.2d 1277 (D.C.Cir.1976). In short, "[r]ather than giving the Clause a cramped construction", the Supreme Court has "sought to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator". *Gravel,* 408 U.S. at 618, 92 S.Ct. at 2623.

Of particular relevance to the decision at bar are those instances in which the federal courts have accorded this immunity to state legislators. In *Star Distributors, Ltd. v. Marino,* 613 F.2d 4, the Second Circuit affirmed the denial of a preliminary injunction which had sought to restrain enforcement of a subpoena issued by a state legislative committee. In so holding, the court stated that

> under our system of federalism, the role of the state legislature is entitled to as much respect as that of Congress. Congress may legislate on matters of national concern, while state legislators act on vital matters of local importance. The need for a Congress which may act free of interference by the courts is neither more nor less than the need for unimpaired state legislatures.

613 F.2d at 9. Noting that "[t]he Supreme Court has stated in dictum that 'the state legislative privilege ... [is] on a parity with the similar federal privilege' under the Speech or Debate Clause, *United States v. Johnson,* 388 U.S. 169 [86 S.Ct. 749]," the *Star Distributors* court concluded that the "shared origins and justifications" of the federal Speech or Debate provision and the doctrine of common-law immunity of state legislators from suit rendered the two doctrines parallel, in the absence of "good

reason" for a contrary conclusion. 613 F.2d at 8. Thus, because the Supreme Court had held that the federal Speech or Debate provision barred a suit for injunctive relief against enforcement of a subpoena issued by a Senate committee, *Eastland*, 421 U.S. 491 [95 S.Ct. 1813], state legislators were to be accorded a similar immunity. *Id.*

■ A salient difference in the scope of the privilege accorded to state legislators and that provided to members of Congress appears to be that the common-law doctrine does not immunize state legislators from federal criminal prosecution in connection with their legislative acts. In *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980), the Supreme Court expressly stated that it had granted certiorari "to resolve a conflict in the Circuits over whether the federal courts in a federal criminal prosecution should recognize a legislative privilege barring the introduction of evidence of the legislative acts of a state legislator" charged with crime. 445 U.S. at 361–62, 100 S.Ct. at 1187–88. Having so stated the issue, the court declined to recognize such a privilege, finding that neither of the "two interrelated rationales" which underlie the Speech or Debate clause would support the granting of immunity. First, the separation of powers doctrine did not mandate the privilege because, under the Supremacy Clause, Federal interference into state legislative process was "not on the same constitutional footing with the interference of one branch of the Federal Government in the affairs of a coequal branch". 445 U.S. at 370, 100 S.Ct. at 1192. The second rationale, which was the need to insure legislative independence, similarly gave way to preeminent

federal criminal statutes. *Id.* at 371–72, 100 S.Ct. at 1192–93.

As this court reads *Gillock*, its holding was expressly confined to those situations in which a state legislator is charged with a federal crime or is the target of a federal criminal investigation. The court distinguished its decision on this basis from those of its precedents which had accorded immunity to state legislators in civil cases. 445 U.S. at 372, 100 S.Ct. at 1193. Thus, *Gillock* stands only for the proposition that "recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its *criminal statutes* with only speculative benefit to the state legislative process". *Id.* at 373, 100 S.Ct. at 1194 (emphasis added).[6] *See also United States v. Craig*, 528 F.2d 773, 783 (7th Cir.1976) (Tome, J., concurring) (principles of common-law immunity, cognizable under F.R.E. 501, protected a state legislator in a civil case but not in a criminal prosecution, because "immunity from civil but not criminal liability has been regarded as sufficient to achieve the purpose of the doctrine of official immunity, which is to promote independence and fearless discharge of duty on the part of the protected officials"). *But see United States v. Meyers*, 432 F.Supp. 456 (D.C.Pa. 1977) (granting a state senator's motion to strike a portion of an indictment against him, because "the doctrine of legislative immunity is one of the fundamental principles of ordered Anglo-American liberty which is made binding on the States by virtue of the Fourteenth Amendment", and the "reasons and public purpose upholding" such immunity were "equally applicable to State and federal legislators").

---

6. Because we interpret *Gillock* in this manner, we must reject the United States' strenuous contention that that case is dispositive of the one before us. The United States Attorney contends that *Gillock* controls this case because the federal grand jury "has Constitutional and statutory authority to be investigating violation of federal criminal laws ... and ... since it has the power to act, it must prevail over the state legislatures' claims of a speech and debate privilege". Brief for United States at 7. We decline, however, to

read *Gillock* so broadly. As we have noted, the Court therein expressly confined its holding to those cases in which the state legislator was the target of a criminal investigation. That situation implicated a much stronger federal interest than any that may be found in the case at bar, where the United States has stipulated that the Committee members are not themselves targets of the investigation. Transcript at 5–6. Accordingly, far from disposing of the present case, we find the *Gillock* holding to be inapposite.

Significantly, despite *Gillock's* admonition that no immunity is recognized for state legislators under criminal investigation, the Third Circuit has recently extended such protection to a Virgin Islands legislator. In *Government of the Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir.1985), the court held that the Virgin Island's legislative immunity provision, contained in a statute found at 48 U.S.C. § 1572(d), · was "closely parallel" to the Speech or Debate Clause in terms of the purposes underlying the two provisions. Therefore, the territorial legislator was by statute accorded immunity from inquiry in federal court regarding his fact-finding and legislative activities, although the privilege did not bar inquiry into whether his activities were in fact legislative in nature. In so holding, the court reaffirmed that

> Fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation. As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity. Legislators must feel uninhibited in their pursuit of information, for '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change ...' *McGrain v. Daugherty*, 273 U.S. 135, 175 [47 S.Ct. 319, 329, 71 L.Ed. 580] (1927).

*Lee*, 775 F.2d at 521–22. Although the result in *Lee* was based on the existence of a specific federal statute which afforded immunity to Virgin Islands legislators, the court's stress on the importance of immunity to the legislative fact-finding process is instructive, and its reasoning is directly apposite to our own inquiry.

Finally, we find a useful analogy in a line of cases in which state revenue officials have been accorded a qualified common-law privilege from disclosure of information sought by a federal grand jury investigating non-tax crime. In *In re Hampers*, 651 F.2d 19 (1st Cir.1981), the court held that the Massachusetts Commissioner of Revenue would not be required to comply with a federal grand jury subpoena because a state statute prohibited disclosure of tax return information except under specified circumstances. Rejecting, *inter alia*, the argument that deference was owed to the grand jury or that disclosure was mandated by virtue of its 'mantle of confidentiality', the court held that the nondisclosure statute created a privilege cognizable under F.R.E. 501 in a federal proceeding.

The *Hampers* court relied heavily on *American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336 (5th Cir. 1981), which mandated a balancing of the policies underlying the privilege against the policies favoring disclosure. *Finch*, 638 F.2d at 1343. Engaging in such a balancing process, the court noted that

> honoring such a privilege in federal court will usually involve some cost to the federal interest in seeking the truth in Federal question cases. It makes a difference whether the federal interest in seeking full disclosure is a weak or a strong one.... Assisting federal grand juries in their criminal investigations is generally a strong interest. But where the information sought is only corroborative of what investigators have alleged on the basis of other information, is seemingly ascertainable from sources other than state tax returns, and addresses only one aspect of a non-tax related crime, the federal interest looms less.

*Id.*, 651 F.2d at 22.

The court balanced the interests involved by asking, *inter alia*, whether "the *injury* that would inure to the relation by the disclosure of the communications [would be] *greater than the benefit* thereby gained for the correct disposal of litigation". *Id.* at 23 (emphasis in original). Concluding that the state's asserted privilege was "intrinsically meritorious in our independent judgment", the court determined that the balance tipped in favor of the state's interest in non-disclosure:

We can easily see that if a state tax return contained the only key to resolving a serious federal crime, the balance would tilt in favor of the federal government.... But if a return contained information that would be easily obtained elsewhere and at best would constitute only cumulative evidence impeaching one of several witnesses, we might have second or third thoughts.

*Id.*

Alluding to the "value in preserving ... the postures of comity and deference arising from federalism", the court concluded thus:

We therefore hold that appellant in this case enjoys a qualified privilege under Rule 501 because of the state nondisclosure statute and that, in order to enforce a subpoena in a federal criminal investigation, a federal grand jury must proffer reasonable cause to believe that a federal crime has been committed, that the information sought will be probative of a mat-

ter at issue in the prosecution of that crime, and that the same information or equally probative information can not be obtained elsewhere through reasonable efforts.

*Id.*[7] *See also In re Cruz,* 561 F.Supp. 1042 (D.Conn.1983); *In re Grand Jury Empanelled January 21, 1981,* 535 F.Supp. 537 (D.N.J.1982) (citing *Hampers* and reaching similar result); *but see United States v. Blasi,* 462 F.Supp. 373 (M.D.Ala.1979) (state non-disclosure statute deemed not to have any direct bearing on controversy regarding grand jury subpoena).

■■■ This court is persuaded that a similar common-law privilege should be recognized in the circumstances of this case. On the whole, we find that the policy underlying the asserted privilege outweighs that favoring disclosure. The legislative fact-finding in which the Committee is engaged falls squarely within the ambit of speech or debate protection, and therefore implicates fully the values of legislative

---

**7.** The United States Attorney contends that *Hampers* is inapposite to this case for several reasons. While he concedes that *Hampers* and its progeny "based their holding on the finding of a qualified common-law privilege under Rule 501", Brief for United States at 16, he nevertheless perseveres in his claim that, under *Gillock,* no such common-law privilege exists in the speech or debate area. However, we have already rejected this argument, *supra* n. 6, as in our view *Gillock* does not control this case.

Secondly, the United States would distinguish the *Hampers* line of cases because they deal with "tax matters where both State and federal policy requir[e] confidentiality and the public in general ha[s] a legitimate expectation that their state and federal tax records would remain confidential". Brief for United States at 16. We do not find this distinction persuasive because the policy of legislative integrity underlying the Speech or Debate Clause is no less important than the requirement of confidentiality in tax matters.

In a related vein, the United States points out that *Hampers* involves the 'required report' privilege recognized "when a state law requires citizens to do something under a promise of confidentiality". Brief for United States at 16. The United States contends that the Third Circuit expressly rejected the required report privilege under Rule 501 in *Matter of Grand Jury Impaneled January 21, 1975 ("Freedman and Cortese"),* 541 F.2d 373 (3d Cir.1976).

We disagree, however, with the United States Attorney's reading of *Freedman and Cortese.*

Although the Third Circuit there held that a federal grand jury subpoena was enforceable against the Prothonotary's Office of the Court of Common Pleas of Philadelphia, despite a confidentiality rule adopted by that court, it reached this conclusion by virtue of a balancing process very similar to that established in *Hampers:*

The state's interest in voluntary compliance (with the filing requirement) will not be seriously impaired by enforcing the instant grand jury subpoena.... On balance, we think that any incidental and speculative effect enforcement of the subpoena would have on voluntary compliance is outweighed by the grand jury's need for this evidence in order effectively to conduct this investigation.

541 F.2d at 382–83. Furthermore, the court expressly left open the possibility of a different outcome of this balancing:

We ... have not decided that a federal court will never recognize a state required report privilege as a matter of federal common law in a federal grand jury investigation. Perhaps there may be instances that will present compelling justifications for denying a federal grand jury relevant information; such justifications were not presented here.

*Id.* at 383. Thus, *Freedman and Cortese* supports the proposition that a grand jury subpoena may be quashed or modified if the state body to which the subpoena is directed presents sufficiently compelling reasons for this result.

independence which underlie the privilege. Furthermore, because none of the Committee members is a target of the investigation, to recognize the privilege will not directly thwart the federal interest in criminal prosecution. Accordingly, we find that the privilege asserted by the Committee is "intrinsically meritorious in our independent judgment". *Hampers*, 651 F.2d at 22.[8]

■ More specifically, we conclude on the basis of the record before us that the injury that would inure to the integrity of the state legislative process by our enforcement of this subpoena outweighs the benefit to be gained by the federal prosecutorial authorities.

The United States Attorney has stated that

> it is the intent of the subpoena to require the production of documents in the form of memorandums, reports, summaries, interview notes and record review notes dealing with an investigation into the purchase of granite for use in the capitol

addition project. Particularly statements dealing with interviews conducted of a list of witnesses that are attached to that subpoena or statements developed by the investigators or attorneys acting as investigators hired by the committee and, again, dealing only with the investigation insofar as it relates to the purchase of granite for use in the capitol project.

> The second paragraph of the subpoena is aimed at transcripts of both public and private hearings that the committee has conducted along with copies of all documents or exhibits referred to in said transcripts of either the public or private hearings. That is the heart of the subpoena.

Transcript at 5. Such materials, we think, would convey the impressions and thought processes of the Committee members, and are thus central to the legislative fact-finding process. While the Committee may divulge this information voluntarily if it chooses to do so, and the United States

---

8. Moreover, we reject the United States' contention that this immunity is merely a use privilege and does not shield legislative action from discovery by the grand jury. In support of this argument the United States Attorney relies on *In re Grand Jury Investigation ("Eilberg")*, 587 F.2d 589 (3d Cir.1978) which in turn cited *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583. We think the United States' reliance on these cases is misplaced.

In *Eilberg*, the Third Circuit affirmed the district court's refusal to quash a federal grand jury subpoena which sought to obtain the telephone records of a Member of Congress who was himself a target of the investigation. The court stated that "the Speech or Debate Privilege is at its core a use privilege", 587 F.2d at 596, but continued that "[t]o be sure, the Speech or Debate Clause has also been construed to permit a legislator to refrain from *testifying* about certain legislative acts". *Id.* To that effect, the court cited the Supreme Court's statement in *Gravel* that "Senator Gravel may not be made to answer—either *in terms of questions* or in terms of defending himself from prosecution—for the events that occurred at the subcommittee meeting". *Id.* at 596, citing *Gravel*, 408 U.S. at 616, 92 S.Ct. at 2622 (emphasis supplied in *Eilberg*). The Third Circuit noted that *Gravel* had established that "a Senator, even a non-target, could not be compelled to testify before a grand jury about a legislative act", *id.*, and that this privilege extended to legislative aides. It continued

But to the extent that the Speech or Debate Clause creates a *testimonial* privilege as well as a *use* immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning. It is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy.... As we have said ... the privilege when applied to records or third-party testimony is one of non-evidentiary use, not of non-disclosure.

*Id.* at 597 (citations omitted) (emphasis in original).

In this court's view, *Eilberg* is inapplicable to the present case because here the subpoena is directed to the legislator himself, rather than to a third party. Therefore, testimonial rather than use immunity applies. As we understand the Committee's argument, it is not attempting to assert the privilege on behalf of others, but rather is claiming that immunity is necessary to protect *its own legislative process*. Accordingly, the United States' argument that the Committee is attempting to "benefit third parties" who are committing crimes by "transfer[ing] legislative privilege" to them, Brief for United States at 15, n. 1, entirely misconstrues the thrust of the Committee's claim. To reiterate: the Committee seeks to protect itself, not the targets of its investigation.

concedes that it has, Transcript at 7–8, this court declines to require such disclosure by enforcing the subpoena. To compel the Committee to divulge this information would represent an impermissible intrusion into the legislative process and would render the status of the Committee little more than an investigative tool of the grand jury. In this regard, we note that

> It is the responsibility of the court to preserve the grand jury's historic role as a bulwark between the individual and the state. Hence, the federal courts have broad supervisory power to prevent grand jury abuse, including the granting of relief from unreasonable and oppressive grand jury process.... when federal district judges are confronted with appropriate motions to quash, limit or enforce grand jury subpoenas, they can and indeed should, exercise their responsibility to prevent grand jury abuse by insisting that the government invoke the subpoena power only when there is solid foundation for doing so.

*In re Grand Jury Matter, Gronowicz,* 764 F.2d 983, 991 (3d Cir.1985) (Becker, J., concurring) (citations omitted).

We are aware that our decision may prove detrimental to the grand jury's investigation. Although the United States has conceded that the Federal Bureau of Investigation "certainly ... could conduct an investigation" of its own "in an attempt to develop what the Committee has developed and then could present it to the grand jury", Transcript at 8, it is also probably true that

> there can yet be no guarantee that a complex investigation involving multiple witnesses and numerous exhibits can be totally duplicated even by the best of investigative agencies, and the possibility

is obvious that critical inculpatory evidence or exculpatory evidence obtained in interview reports, closed hearing testimony, or multiple exhibits

may be lost if the subpoena is not enforced. Brief for United States at 19. However, our balancing of this potential detriment against the clear and impermissible intrusion into the legislative sphere which the subpoena represents compels our conclusion that, with respect to most of the information sought, enforcement must be denied.[9]

■ We will except from our holding certain information the procurement of which, we find, would not intrude unduly into the legislative process. The grand jury may obtain from the Committee information regarding the identity of witnesses interviewed. Furthermore, should the grand jury become aware, in the course of its own investigation, of documents or exhibits authored by a witness or by a third party other than the members of the Committee, which documents or exhibits are determined to be in the Committee's possession and which cannot be obtained by any other means, then the subpoena power may be employed. With respect to all other matters, the Motion to Quash the subpoena will be granted.

## ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT the Motion to Quash Subpoena is granted, EXCEPT with respect to the following materials:

1. The identities of all witnesses;

2. Any exhibits or documents of which the grand jury may become aware, in the course of its investigation, authored by

9. This conclusion is buttressed by the contentions of the Committee that much of the information sought is readily available from other sources. Although those sources are accessible to the FBI, they have apparently not been fully exploited. Affidavit of Reizdan Moore, Counsel to the Committee, annexed as Exhibit D to Movant's Brief, Par. 3. Furthermore, the Committee has cooperated to a considerable extent with the federal investigation and has voluntarily provided substantial information, including the names of witnesses and the impressions of Committee Members regarding the investigation. *Id.* at Pars. 4, 5. Finally, the counsel for the Committee states that "all relevant and pertinent committee documents, which have not been made public, will be made public by February 6". *Id.* at 10. Thus this court cannot see any pressing read for the enforcement of this subpoena.

witnesses or by third parties other than the Committee or its members, which are in the possession of the Committee and which cannot be obtained from any other source.

With respect to this information, the subpoena, as modified, shall be enforced.